429 F.2d 702
 MARINE CARRIERS CORPORATION, Appellee,
v.
Henry H. FOWLER, individually, and as Secretary of the Treasury, Lester D. Johnson, individually, and as Commissioner of Customs, Alan Stephenson Boyd, individually, and as Secretary of Department of Transportation, Willard J. Smith, individually, and as Commandant of U. S. Coast Guard, and the Bureau of Customs, Appellants.
 No. 839.
 Docket 34547.
 United States Court of Appeals, Second Circuit.
 Argued June 3, 1970.
 Decided July 1, 1970.
 
 Richard M. Hall, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., New York City, Patricia M. Hynes, Asst. U. S. Atty., on the brief), for appellants Fowler, and others.
 Joseph Cardillo, Jr., New York City (Robert V. Corbett, John P. Cardillo, Cardillo & Corbett, New York City, on the brief), for appellee Marine Carriers Corp.
 Elkan Turk, Jr., Burlingham, Underwood, Wright, White & Lord, New York City, submitted brief for amicus curiae American Trading and Production Corp.
 Raymond J. Burke, Thomas A. Dillon, Burke & Parsons, New York City, Marvin J. Coles, Coles & Goertner, Washington, D. C., submitted brief for amici curiae American Tramp Steamers Association, and others.
 Before LUMBARD, Chief Judge, and SMITH and KAUFMAN, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 Like all maritime nations of the world, the United States treats its coastwise shipping trade as a jealously guarded preserve. In order to participate in this trade, a vessel's credentials must be thoroughly American. The ship must have been built in an American shipyard and be owned by American citizens. Moreover, it must not have trifled with its American heritage.
 
 
 2
 Under the first proviso to section 27 of the Merchant Marine Act of 1920, the statute we are required to construe in this case, any vessel which has acquired "the lawful right to engage in the coastwise trade, either by virtue of having been built in, or documented under the laws of the United States," and which has later lost that right by being sold to a foreign owner, is prohibited from ever regaining its eligibility for the coastwise trade.
 
 I. Facts
 
 3
 The OBSERVER, the vessel whose eligibility for the coastwise trade we must adjudicate in this case, is the issue of a marriage of convenience — and as occasionally happens with such marriages, the lineage is difficult to determine. In this case, the end product is the result of "jumboizing," a process whereby the stern of one oil tanker is attached to the forebody of another in order to produce a tanker with a greater carrying capacity.
 
 
 4
 The OBSERVER'S ancestry begins with the tanker WAPELLO, a vessel constructed in 1953 in an American shipyard for Panamanian owners and placed under Panamanian registry. Some years later the WAPELLO was dismembered, and in a Japanese shipyard its forebody was joined to the stern of the tanker ESSO CHITTAGONG, an American built vessel which was later sold to a foreign owner and registered Panamanian. The product of this coupling became known as the SANTA HELENA, and was placed under Liberian registry. But the SANTA HELENA was to be no more than a way station for the old forebody of the WAPELLO. In 1966 the SANTA HELENA'S forebody (previously the forebody of the WAPELLO), was sold to Marine Carriers, who then proceeded to attach it to the stern of the TRUSTCO, a vessel built in America in 1943, American owned ever since that date, and enrolled in the coastwise trade. The connection took place in an American shipyard, and the progeny was named the OBSERVER. The OBSERVER'S forebody, which, as we have noted, was the forebody of the WAPELLO, comprises three-quarters of its total length. On the other hand, its stern, formerly the stern of the TRUSTCO, apparently is far more valuable than the forepart.
 
 
 5
 Before contracting for the purchase of the forebody of the SANTA HELENA, Marine Carriers commenced negotiations with various administrative agencies for appropriate documentation of the OBSERVER as an American vessel. The shipping laws provide for two basic types of documentation: registration and enrollment. Registration entitles a vessel to engage in foreign trade; enrollment is a prerequisite for participation in coastwise trade. See 46 U.S.C. §§ 11, 252. In April 1966, Marine Carriers inquired of the United States Maritime Administration whether the OBSERVER would be considered a privately owned American flag vessel and was advised that the OBSERVER "will be a vessel rebuilt in the United States." In October 1966, however, in response to renewed inquiries by Marine Carriers, the Commissioner of Customs ruled that the OBSERVER would be ineligible for the coastwise trade. The basis for the Commissioner's ruling was that the OBSERVER'S forebody had formerly been the forebody of the WAPELLO, a ship which, under his interpretation of the first proviso to section 27, had forfeited the right to engage in the coastwise trade by having been built in the United States and later sold to a foreign owner.
 
 
 6
 When the joining of the stern of the TRUSTCO and the forebody of the SANTA HELENA, nee WAPELLO, to the OBSERVER had been completed, Marine Carriers applied to the Bureau of Custons for registration of the OBSERVER as an American ship. Since registration merely requires that a ship be owned by United States citizens, see 46 U.S.C. § 11, the Bureau issued a temporary Certificate of Registry and a new registration number to the OBSERVER. The Certificate of Registry recited that the OBSERVER was a rebuilt ship which had originally been built in the year 1943, the year of the TRUSTCO'S construction.
 
 
 7
 What Marine Carriers really desired to secure for the OBSERVER, however, was not merely registration as an American vessel but also enrollment in the coastwise trade. Accordingly, it petitioned the Secretary of the Treasury to review the determination of the Commissioner of Customs that the OBSERVER was ineligible for enrollment. The Treasury replied that it had carefully considered the issues involved and agreed with the decision of the Commissioner. A request for rehearing proved equally unavailing.
 
 
 8
 Having exhausted all possible avenues of administrative relief, Marine Carriers commenced this action in the Southern District of New York in October 1967, seeking a declaratory judgment that the OBSERVER was entitled to enrollment in the coastwise trade and an injunction ordering those who had excluded the OBSERVER to approve her enrollment. Having submitted affidavits and exhibits, both the plaintiff and the defendants moved for summary judgment. Judge Tenney granted the motion of Marine Carriers and ordered the defendants to approve the OBSERVER'S application for coastwise trading privileges.
 
 II. The Decision Below — Eligibility of the WAPELLO for the Coastwise Trade
 
 9
 Due to the OBSERVER'S somewhat peculiar and involved origins, troublesome and potentially material issues of fact abounded in this case at the time the parties moved for summary judgment. Should the OBSERVER be characterized as an entirely new ship, as a rebuilt TRUSTCO or as a rebuilt SANTA HELENA? Under one view of the law, however, all of these issues were immaterial. The OBSERVER, as we have stated, was constructed in an American shipyard from the forebody of the WAPELLO and the stern of the TRUSTCO. The TRUSTCO'S eligibility for coastwise trade was not subject to question; it was, in fact, enrolled in this trade. If the WAPELLO, and a fortiori its forebody, were also eligible, it would follow that the OBSERVER, however it may be characterized, was entitled to coastwise trading privileges. The district court opted for this view and concluded that the WAPELLO was eligible for the coastwise trade and, accordingly, granted Marine Carriers' motion for summary judgment. Only if this conclusion is correct may we avoid the knotty factual issues lurking in this case and uphold the grant of summary judgment. Accordingly, the first issue we proceed to discuss is the WAPELLO'S eligibility for the coastwise trade. In order to achieve some clarity in this complex case, we shall assume that Marine Carriers purchased not just the forebody of the WAPELLO but the entire vessel. Obviously, there can be no objection to the admission of the WAPELLO'S forebody to the coastwise trade if the entire vessel were entitled to be admitted.
 
 
 10
 To be admitted to the coastwise trade, a vessel must meet two basic requirements: it must have been built in an American shipyard and it must be owned by American citizens.[1] 46 U.S.C. §§ 11, 252. The WAPELLO was constructed in an American yard in 1943. Its purchase by Marine Carriers, an American-owned corporation, in 1966, placed it under American ownership. Thus, upon its purchase by Marine Carriers, the WAPELLO would have met the basic prerequisites for enrollment in the coastwise trade. Section 27 of the Merchant Marine Act of 1920 does not alter these basic requirements.[2] 46 U.S.C. § 883. A proviso added to this section in 1935 (hereinafter the first proviso), however, provided that certain vessels, although American-built and American-owned, were nevertheless disqualified from engaging in the coastwise trade. Act of July 2, 1935, ch. 355, 49 Stat. 442. Specifically, this proviso seems to exclude from coastwise trade vessels built in the United States, then sold foreign, and later reacquired by American owners. The import of the statute is that once the right to engage in coastwise trade was forfeited by reason of foreign ownership, that right could not be regained.
 
 
 11
 The principal obstacle to determining the applicability of this statute to the WAPELLO arises from its rather inartful wording. Since the proper interpretation of this language is the focus of dispute in this case, we quote the proviso in full. It states:
 
 
 12
 "That no vessel having at any time acquired the lawful right to engage in the coastwise trade, either by virtue of having been built in, or documented under the laws of the United States and later sold foreign in whole or in part, or placed under foreign registry, shall hereafter acquire the right to engage in the coastwise trade."
 
 
 13
 The difficulty in interpreting this language is compounded by the need to reconcile two phrases which it is argued are inconsistent. The first phrase seems to suggest that the proviso applies only to those vessels sold foreign after having acquired the full legal right to engage in the coastwise trade; the second phrase, that it applies to all vessels sold foreign after having been built in the United States. The alleged inconsistency between these two phrases arises from the statutory requirement to which we have already alluded: that to acquire the full legal right to engage in the coastwise trade, a vessel must not only have been built in the United States, it must also be owned by citizens of the United States. See 46 U.S.C. §§ 11, 252. Marine Carriers argues vociferously that the first phrase is the operative language of the proviso. It says that the WAPELLO had not been American-owned before being sold Panamanian. Accordingly, it had not at that time "acquired the lawful right to engage in the coastwise trade" and, therefore, would not be prevented from acquiring this right upon being returned to American ownership.[3] The appellants in turn direct our attention to the second phrase of the proviso. They insist that the WAPELLO, having been built in the United States, and then sold to Panamanian owners became forever disqualified from participation in the coastwise trade.
 
 
 14
 In our efforts to resolve an inconsistency of this nature, we are not unmindful of the admonition that "the meaning of a statute is to be looked for, not in any single section, but in all the parts together and in their relation to the end in view." Panama Refining Co. v. Ryan, 293 U.S. 388, 439, 55 S.Ct. 241, 256, 79 L.Ed. 446 (1935) (Cardozo, J., dissenting). See also NLRB v. Lion Oil Co., 352 U.S. 282, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957) (Frankfurter, J.) (a court must "find that interpretation which can most fairly be said to be embedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that [the legislative body] manifested"); Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956); United States v. Menasche, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955); Palmer v. Massachusetts, 308 U.S. 79, 83, 60 S.Ct. 34, 84 L.Ed. 93 (1939). Reading the two allegedly inconsistent clauses in pari materia, we discern one interpretation which would make the statute's language "comprehensible." It appears that if the vessel is built in the United States, it does not ipso facto acquire the full legal right to participate in the coastwise trade. It does, however, acquire a conditional right, specifically, a right conditioned upon the vessel's ownership by a citizen of the United States. If the first phrase of the proviso — "that no vessel having at any time acquired the lawful right to engage in the coastwise trade" — be construed as a reference to this conditional right, any apparent inconsistency between the two phrases vanishes. Since this view gives clarity to an otherwise obfuscated proviso, we are of the view that the WAPELLO "acquired the lawful right to engage in the coastwise trade * * * by virtue of having been built in * * * the United States," that it lost this right by being "sold foreign" to Panamanian owners, and that under the terms of the first proviso to section 27 it could never regain this right.
 
 
 15
 Consideration of the legislative history of the first proviso reinforces our view that the WAPELLO is ineligible for the coastwise trade. The committee reports in both the Senate and the House of Representatives, indeed, could not have been more specific on this point. Both reports enumerated two classes of vessels which the proviso was intended to exclude from the coastwise trade:
 
 
 16
 "1. Vessels built in or documented under the laws of the United States and later sold to foreign owners.
 
 
 17
 2. Vessels built in the United States for foreign countries or foreign purchasers."
 
 
 18
 S.Rep.No.870, 74th Cong., 1st Sess. (1935); H.R.Rep.No.118, 74th Cong., 1st Sess. (1935). The WAPELLO, built in the United States for Panamanian purchasers, falls squarely within the four corners of the second example.[4]
 
 
 19
 Not only the specific references contained in the committee reports but also the general purposes of the various provisions governing the admission of vessels to the coastwise trade strongly suggest that the WAPELLO should be excluded from this trade. These provisions are unabashedly protectionist. Their aims are to protect the American shipping industry already engaged in the coastwise trade, to provide work for American shipyards, and to improve and enhance the American Merchant Marine. See Pennsylvania R. R. v. Dillon, 118 U.S.App.D.C. 257, 335 F.2d 292, 295 n. 5 (1964); Merchant Marine Act of 1920, ch. 250, 41 Stat. 998 (preamble); S.Rep. No.870, supra; H.R.Rep.No.1947, supra; Morse, A Study of American Merchant Marine Legislation, 25 Law & Contemp. Prob. 57 (1960). To permit ships built in the United States for foreign owners, such as the WAPELLO, to participate in the coastwise trade upon resale to American owners could result in an excessive number of ships engaged in that trade to the prejudice of other American shippers. The depressing of charter rates could be one by-product which Congress sought to avoid. Moreover, even if there should exist a need for additional ships in the coastwise trade, the statutory scheme seems to envision that this demand should be met by new construction in American shipyards. Finally, since ships in the position of the WAPELLO are not new ships but, on the contrary, have been sold at least twice, their admission to the coastwise trade is not likely to result in the improvement and modernization of the American Merchant Marine. In sum, we are of the view that the first proviso to section 27 must be interpreted as a coherent whole and that we must give recognition to the expressed intent of Congress, and the purposes of the statutory scheme. Accordingly, we are led to the conclusion that the WAPELLO could not engage in the coastwise trade.
 
 III. Eligibility of the OBSERVER for the Coastwise Trade
 
 20
 Because our conclusion differs from Judge Tenney's on the WAPELLO'S eligibility for the coastwise trade, we must reach the issue of whether on the issue of its eligibility for coastwise trade the OBSERVER is to be considered a new ship, a rebuilt TRUSTCO, or a rebuilt SANTA HELENA.[5] One of these three options — that the OBSERVER is an entirely new ship — we may eliminate from consideration at the outset. In all administrative determinations regarding the OBSERVER'S right to participate in various aspects of the shipping trade, the United States Maritime Administration and the Bureau of Customs consistently referred to the OBSERVER as a rebuilt ship. Moreover, to characterize the OBSERVER as a new vessel built in the United States for American owners which is consequently eligible for the coastwise trade, would enable shipowners to avoid our ruling that vessels with the WAPELLO'S history should be excluded from the coastwise trade. If the OBSERVER were to be considered a new ship, a shipowner could easily purchase two ships ineligible for coastwise trade (like the WAPELLO), and attach the stern of each to the forebody of the other in American shipyards, making both progeny eligible for the coastwise trade. The effect of this process — two ships eligible for coastwise trade where before there were none — would be in direct conflict with the statutory purpose to protect the business of shippers already engaged in the coastwide trade. Although the joining process would have occasioned some work for American shipyards, the end result is not likely to bring about a marked improvement or modernization of the United States Merchant Marine.
 
 
 21
 There remain two avenues we may travel. First, the OBSERVER may be characterized as a rebuilt SANTA HELENA. In such event, we have already set forth our reasons for its exclusion. The genealogy of the OBSERVER requires this conclusion. We have stated that the joining of the stern of one vessel to the forebody of anther constitutes reconstruction of one of the contributing parents rather than the creation of a new vessel. The SANTA HELENA is itself either a rebuilt WAPELLO or a rebuilt. ESSO CHITTAGONG. Since both of these vessels were sold to foreign owners after being built in the United States, they, and their offspring the SANTA HELENA, would be excluded from the coastwise trade under the first proviso to section 27. Were the OBSERVER to be considered a rebuilt SANTA HELENA, it would also be subject to the taint of the SANTA HELENA'S parentage. Furthermore, the second proviso to section 27, a provision relating specifically to rebuilt ships which was enacted in 1956 and amended in 1960, offers an alternative ground for the exclusion of the SANTA HELENA.[6] Act of July 14, 1956, Pub.L.No.84-714, 70 Stat. 544; Act of July 5, 1960, Pub.L. No.86-583, 74 Stat. 321. Under its terms, "no vessel * * * which has acquired the lawful right to engage in the coastwise trade, by virtue of being built in * * * the United States, and which has later been rebuilt, shall have the right thereafter to engage in the coastwise trade, unless the entire rebuilding * * * is effected within the United States." Since the two parents of the SANTA HELENA, the WAPELLO and the ESSO CHITTAGONG, had both acquired the lawful right to engage in the coastwise trade by being built in the United States, and since the rebuilding which spawned the SANTA HELENA was effected in Japan, this exclusionary clause of section 27 requires barring the SANTA HELENA and its progeny from coastwise trade.
 
 
 22
 Maritime transplants seem to present problems gratefully absent in the human variety. In the former we have considerable difficulty in distinguishing the donor from the donee. In the latter both are clearly identified. In any event, if the OBSERVER were to be considered a rebuilt TRUSTCO instead of a rebuilt SANTA HELENA, we are of the view that it would be eligible for coastwise trade. The TRUSTCO was American built and, throughout its existence, American owned. Accordingly, it never ran afoul of the first proviso to section 27. And, the rebuilding which produced the OBSERVER was in full accord with the structures of the second proviso, since it was carried out in an American shipyard. Furthermore, as required by the second proviso, "the construction of any major components of the hull or superstructure of the vessel," including the forebody which was originally the forebody of the WAPELLO, was also effected within the United States.[7]
 
 
 23
 Accordingly, the crucial factor in determining the OBSERVER'S eligibility for the coastwise trade is whether it should be characterized as a rebuilt TRUSTCO or a rebuilt SANTA HELENA. Nothing in the rather sparse record before us would lead us to conclude that this question is not a material issue of fact which requires trial. Without the benefit of expert testimony, we cannot judge the weight to be given to the fact urged upon us, that the SANTA HELENA'S forebody comprises three-quarters of the OBSERVER'S length but that the TRUSTCO'S stern is by far the more valuable part of the OBSERVER. Moreover, the Bureau of Customs seems to have made inconsistent determinations as to the appropriate category into which the OBSERVER falls. The OBSERVER'S temporary Certificate of Registry strongly suggests that the OBSERVER is to be considered a rebuilt TRUSTCO, reciting that the OBSERVER is a rebuilt ship originally constructed in 1943, the year of the TRUSTCO'S construction. The Bureau of Customs, however, issued not only a temporary Certificate of Registry but also a new registration number. The TRUSTCO was registered as a United States vessel and, under 19 C.F.R. § 3.28, subd. C, a rebuilt vessel retains its registry number. The issuance of a new registration number therefore suggests that the OBSERVER was viewed as a rebuilt SANTA HELENA, a vessel which was not registered American and, consequently, could not have carried a registration number through the rebuilding process. Given the apparent inconsistency in these agency determinations, we are of the view that a trial could shed some light on the reasons for and meaning of the actions of the Bureau of Customs.
 
 
 24
 For all the reasons stated we reverse and remand for a trial.
 
 
 
 Notes:
 
 
 [1]
 There are two exceptions, not relevant here, to the general rule that a vessel must have been built in the United States and owned by an American to be enrolled in the coastwise trade. Foreignbuilt vessels owned by Americans and registered American on February 1, 1920 may be enrolled, as may vessels owned by the United States on June 5, 1920. 46 U.S.C. § 13. Vessels sold, chartered, or leased by the Secretary of Commerce, without regard to where they were built, are also eligible for enrollment. 46 U.S. C. § 808
 
 
 [2]
 The introductory portion of section 27, as amended 46 U.S.C. § 883, reads:
 "No merchandise shall be transported by water, or by land and water, on penalty of forfeiture thereof, between points in the United States, including Districts, Territories, and possessions thereof embraced within the coastwise laws, either directly or via a foreign port, or for any part of the transportation, in any other vessel than a vessel built in and documented under the laws of the United States and owned by persons who are citizens of the United States, or vessels to which the privilege to engage in the coastwise trade is extended by section 13 or 808 of this title. * * *"
 Section 27, as amended 46 U.S.C. § 883, also contains six provisos, two of which (the first and the second) are relevant to this appeal. The first is quoted in the text; the second, in note 6.
 
 
 [3]
 The district court accepted Marine Carriers' interpretation of the proviso, dismissing the second phrase as a shorthand means of indicating the routes by which a vessel may acquire "the lawful right to engage in the coastwise trade." The effect of this interpretation is that it leads to the unlikely result of excluding from the coastwise trade vessels built in the United States for Americans and then sold to foreign owners, but including vessels originally built in the United States for foreign owners. Neither the opinion of the district court nor the arguments of Marine Carriers in this court suggest any reason in logic or policy why these two classes of ships should be treated differently
 
 
 [4]
 Following the statement that vessels built in the United States for foreign purchasers are intended to be excluded by the proviso, both committee reports go on to state that the existing vessels falling within this class were built during or shortly after the First World War. Marine Carriers seizes upon this statement as the basis for its argument that the only vessels in that class intended to be excluded were those ships to which the reports made specific reference. We are unable to agree that a statute which speaks in general terms should not receive general application. When Congress intended a statute to apply only to a specific, existing class of ships, it has had no difficulty in expressing this intentSee 46 U.S.C. § 13 (ships owned by the United States prior to June 5, 1920 may participate in the coastwise trade regardless of where constructed).
 In addition to the specific expression of congressional intent, Thomas E. Stakem, Administrator of the Federal Maritime Administration, indicated in testimony before the Senate Merchant Marine and Fisheries Subcommittee in 1953 his interpretation of the first proviso "that no vessel that is built in the United States and is placed under foreign registry shall thereafter acquire the right to engage in the coastwise trade." In an effort to rebut this, Marine Carriers directs our attention to 46 C.F.R. § 67.01 — 5(c). This regulation provides:
 "The following classes of vessels are entitled to receive marine documents under existing laws:
 (c) Class 3. Any vessel built in the United States in whole or in part for the account of one who is not a citizen and then recorded, which thereafter becomes wholly owned by a citizen and has never before been documented."
 We do not believe this regulation is at all conclusive on the issue of the WAPELLO'S eligibility for the coastwise trade, for "recorded" or "documented" may refer to either registration or enrollment. The regulation may say no more than that ships such as the WAPELLO may be registered American and engage in the foreign trade upon being returned to American ownership. In any event, even if it should have some applicability to enrollment, the regulation pales before the specific expressions of congressional intent.
 
 
 [5]
 The appellants contend that if we are to hold that the WAPELLO could not engage in coastwise trade, the OBSERVER must also be excluded under the first proviso. The theory urged seems to be that if the WAPELLO itself cannot participate in the coastwise trade, its forebody is fatally tainted and any ship of which this forebody is a part is forever barred from the coastwise trade. We discern a major flaw in this line of reasoning, however. The first proviso speaks of vessels, not of their component parts. Its effect is to exclude the WAPELLO as an entity. The statute governing the components which may be employed in rebuilding a vessel for the coastwise trade is the second proviso to section 27See note 6 infra. This proviso requires only that "the construction of any major components of the hull or superstructure of the vessel [must be] effected within the United States"; there is no requirement that the components must be free from any taint arising out of a previous sale. It is undisputed that the construction of the WAPELLO'S forebody was effected within the United States.
 
 
 [6]
 The second proviso to section 27, as amended 46 U.S.C. § 883, reads:
 "That no vessel of more than five hundred gross tons which has acquired the lawful right to engage in the coastwise trade, by virtue of having been built in or documented under the laws of the United States, and which has later been rebuilt, shall have the right thereafter to engage in the coastwise trade, unless the entire rebuilding, including the construction of any major components of the hull or superstructure of the vessel, is effected within the United States, its Territories (not including trust territories), or its possessions. * * *"
 
 
 [7]
 As opposed to the admission of the WAPELLO, the admission of a rebuilt TRUSTCO to the coastwise trade would not be inconsistent with the purposes articulated for regulating this trade. Before being rebuilt, the TRUSTCO was enrolled in the coastwise trade; allowing it to be enrolled in a rebuilt form will not add to the number of ships engaged in that trade and, hence, will not create a danger of adverse competitive effects on other shippers. The increase in the TRUSTCO'S carrying capacity by the addition of the WAPELLO'S larger forebody to its stern means that the segment of the American Merchant Marine participating in the domestic trade will be improved by a larger and better ship. The attachment of the WAPELLO'S forebody to the TRUSTCO'S stern in a Baltimore shipyard occasioned work for American shipyards. It may be argued, of course, that allowing a rebuilt TRUSTCO to participate in the coastwise trade has actually withdrawn work from American shipyards by motivating Marine Carriers not to have an entirely new ship constructed. It is equally logical to suppose, however, that were a rebuilt TRUSTCO to be ineligible for the coastwise trade, Marine Carriers would have elected to preserve the TRUSTCO in its original, unimproved form, rather than incur the expense of constructing a completely new vessel