BETHLEHEM STEEL CORPORATION,
Plaintiff,

v.

The UNITED STATES, Defendant.

Court No. 80-9-01484.

United States Court of International
Trade.

Nov. 23, 1982.

Haight, Gardner, Poor & Havens, New
York City (Nicholas H. Cobbs, New York
City, on the brief), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, New York
City, Atty. in Charge, International Trade
Field Office, Commercial Litigation Branch
(Jerry P. Wiskin, New York City, on the
brief), for defendant.

BOE, Judge:

In the above-entitled action the plaintiff
contests the imposition of a duty upon the
subject merchandise, a cargo of fluorspar,
entered at Lackawanna, New York. Plaintiff claims a reimbursement of the duty
paid on the ground that the cargo was
shipped from Brownsville, Texas to Lacka-

wanna, New York (via Contrecour, Canada) and hence did not constitute an "import" subject to duty.

The facts herein are undisputed. In Brownsville, Texas, plaintiff purchased the subject merchandise, which had been imported from Tampico, Mexico, duty paid. Plaintiff arranged transportation of the fluorspar on a foreign flag vessel (Japan Lines) from Brownsville to Contrecour, Canada, with subsequent transshipment to be made to Lackawanna, New York. Upon arrival of the cargo in Contrecour on August 30, 1974, plaintiff for the first time was advised by the United States Customs Service that the shipment of the cargo from Brownsville to Lackawanna on a vessel of foreign registry constituted a violation of the Merchant Marine Act, 46 U.S.C. § 883, which provides:

> No merchandise shall be transported by water, or by land and water, on penalty of forfeiture thereof, between points in the United States, including Districts, Territories, and possessions thereof embraced within the coastwise laws, either directly or via a foreign port, or for any part of the transportation, in any other vessel than a vessel built in and documented under the laws of the United States and owned by persons who are citizens of the United States, . . .

In an effort to avoid such a violation, plaintiff in March 1975 offered the cargo of fluorspar for sale to Canadian and other foreign corporations. However, the cargo could not be sold. On March 2, 1976, plaintiff forwarded to Customs a request for advice regarding the shipment of the subject merchandise and its possible violation of 46 U.S.C. § 883. On May 7, 1976, Customs ruled that the shipment of the fluorspar cargo from Brownsville to Lackawanna, via Contrecour, Canada, would be a "transportation between United States points in violation of" 46 U.S.C. § 883. Plaintiff, nevertheless, shipped the cargo to Lackawanna, New York, in July of 1976, where the cargo was seized by Customs pursuant to its determination that plaintiff had violated the coast-to-coast laws. Upon payment by plaintiff of a mitigated penalty of $700 and upon the preparation and filing of a consumption entry and the payment of the appropriate import duty by the plaintiff, as further required by Customs, the cargo was released.

Plaintiff moves for summary judgment seeking a refund of the import duties paid on the subject merchandise. Defendant cross-moves for summary judgment rejecting plaintiff's claim for refund.

In support of its claim, plaintiff contends that the subject merchandise was not subject to any import duty because it had never been "exported" from Brownsville, Texas. Plaintiff relies on a rule in Customs law that the question of exportation of merchandise is controlled by the intent of the parties at the time of shipment. *See Nassau Distributing Co. v. United States,* 29 Cust.Ct. 151 (1952); *Moore Dry Goods Co. v. United States,* 11 Ct.Cust.Appls. 449 (1923).

In the instant action it is undisputed that at the time of the shipment of the merchandise in question from Brownsville, Texas, the plaintiff did not intend to export the subject merchandise. The intent of the plaintiff clearly was to cause the subject merchandise to be transported from Brownsville, Texas to Lackawanna, New York, via Contrecour, Canada. However, the characterization of an exportation at the time of shipment "* * * does not completely eliminate subsequent events from consideration." *United States v. National Sugar Refining Co.,* 39 CCPA 96, 101 (1951). Merchandise which, after its initial shipment, is intended to be or in fact is diverted into the commerce of an intermediate country, becomes an export of that intermediate country. *C.J. Tower & Sons v. United States,* 67 Treas.Dec. 1358 (1935); *Hospitaline Inc. v. United States,* 48 Cust.Ct. 563 (1962), *aff'd* 50 Cust.Ct. 556 (1963); *Cardinal Glove Inc. v. United States,* —— CIT ——, Slip Op. 82–59 (July 22, 1982). The contingency of diversion sufficient to negate plaintiff's original intent at the time of shipment must, however, have "a realistic basis in fact and not mere conjecture."

*Hugo Stinnis Steel & Metals Co. v. United States,* 80 Cust.Ct. 175, 192 (1978), *aff'd* 66 CCPA 84, 599 F.2d 1037 (1979).

■ In the instant action, after the unlading of the merchandise in question, the overt efforts of the plaintiff offering to sell the cargo to potential users of fluorspar in Canada, Europe and the Far East constituted not a contingency or possibility of diversion but an actual entry into the commerce of the intermediate country, Canada. The subject merchandise thereby was converted into an exportation to Canada from whence, upon its subsequent shipment to the United States, it became an export of that intermediate country.

However, the plaintiff now contends that the ruling made by Customs on May 7, 1976, that the shipment from Brownsville, Texas to Lackawanna, New York, via Contrecour, Canada in a vessel of foreign registry "completing a transportation between United States points in violation of 46 U.S.C. § 883," estops the Government from claiming herein that the subject merchandise was an export from Canada, subject to United States duty. In support of its contention the plaintiff relies on recent decisions in which the doctrine of collateral estoppel has been applied to determinations by administrative agencies of the United States. The doctrine has been invoked against the Government if it is found that the Government is acting in its proprietary rather than sovereign capacity. *See Hanover Bank v. United States,* 285 F.2d 455 (Ct.Cl.1961); *United States v. Georgia Pacific,* 421 F.2d 92 (9th Cir.1970).

■ Our appellate court has held that the Government through its Customs Service is acting in its sovereign capacity in the collection of duties on imports. Judge Miller, speaking for the court in *Air-Sea Brokers, Inc. v. United States,* 66 CCPA 64, 68, 596 F.2d 1008 (1979), stated:

When acting in its soverign [sic] capacity, the Government is acting for the benefit of the general public—a role clearly embracing the collection or refund of duties on imports. Accordingly, we hold that ... equitable estoppel, even if available in cases involving the Government in its proprietary capacity, is not available against the Government in cases involving the collection or refund of duties on imports.

The foregoing holding has been reaffirmed in *Farrell Lines Inc. v. United States,* —— CCPA ——, C.D. 4864 (August 20, 1981).

This court, following the decisions of our appellate court, accordingly finds that the collateral estoppel urged by the plaintiff cannot be invoked against the Government herein while acting in its sovereign capacity in the collection of duties on imports.

The plaintiff has placed special reliance upon the decision of the United States Supreme Court in *United States v. Utah Construction Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1965). There the Court held that factual determinations by independent administrative agencies (such as the Board of Contract Appeals and the National Labor Relations Board) acting in an adjudicatory capacity are considered final, and that "courts have not hesitated to apply *res judicata* to enforce repose" as to such findings. *Id.* at 421–22, 86 S.Ct. at 1560. The court further pointed out that the Wunderlich Act clearly established the Board of Contract Appeals as *the* finder of fact within its "contract area of competence," thus causing the findings of the Board which had been fully litigated to be subject to estoppel.

The factual determinations of the Customs Service, however, are not intended to be final. The determinations thereof are subject to protest and are triable *de novo* by this court. Hence, even were it to be found that the Government did not act in its sovereign capacity in its factual determination supporting the seizure of plaintiff's merchandise and the assessment of the penalty pursuant to 46 U.S.C. § 883, collateral estoppel cannot be invoked against the Government in assessing duties upon the subject merchandise, as an import from Canada.

Plaintiff finally contends that the provisions of the Merchant Marine Act, 46 U.S.C.

§ 883 and the Tariff Act of 1930, as amended, must be construed *in pari materia*. Arguing that the determination by Customs that plaintiff's shipment from Brownsville to Lackawanna on a vessel of foreign registry constituted a violation of the Merchant Marine Act, plaintiff renews his conclusion that the merchandise in question was not an export and that, accordingly, no duties were due thereon because no importation occurred.

■ It is an acknowledged general rule that statutes which have the same purpose or which relate to the same matter or subject are *in pari materia* and are to be construed together.

■ The purposes of the Merchant Marine Act, 46 U.S.C. § 883, and the tariff laws, however, are patently different. The Merchant Marine Act is designed to protect the American shipping industry engaged in coastwise trade, to provide work for American shipyards and to improve the American merchant marine. *Marine Carriers Corp. v. Fowler,* 429 F.2d 702 (2d Cir.1970). The tariff laws, on the other hand, implement the provisions of Article I, Section 8 of the United States Constitution and are designed to provide revenue, regulate commerce with foreign countries and to protect industries within the United States.

In the instant action this court is unable to discern wherein the provisions of section 883 of the Merchant Marine Act are in any manner material to the application of our tariff statutes. The respective statutes do not relate to the same matter or subject and, accordingly, are not statutes to be construed *in pari materia*. *Bluefries New York, Inc. v. United States,* 40 Cust.Ct. 395, 400 (1958).

Plaintiff submits, however, the case of *M/V Nonsuco, Inc. v. Commissioner of Internal Revenue,* 234 F.2d 583 (4th Cir.1956) should be determinative of its contention. The issue in *M/V Nonsuco* was whether the plaintiff therein was entitled to an exemption under the United States Income Tax Laws (section 231(d)(1)) by virtue of the reciprocity provisions contained in the revenue act of the Philippine Islands. In order to determine whether a reciprocal exemption applied, it was necessary for the court to examine, in addition to our revenue laws, the Merchant Marine Act. In short, unlike the Philippine statute which contained in its single revenue act an exemption relating to coastwise shipping, the like exemption relating to coastwise shipping was not included in the United States revenue act (section 231(d)(1)), but rather in section 883 of the Merchant Marine Act. Contrary to the interpretation by plaintiff, the court did not hold the Merchant Marine Act and section 883 thereof *in pari materia* to the Revenue Act; the court merely held that the exemption provision deemed reciprocal with the Philippine Act was to be found and defined in a statute other than the Revenue Act and that reference to section 883 of the Merchant Marine Act was necessarily required.

In the instant action neither the appropriate tariff schedule under which the subject merchandise may be imported into the United States nor section 883 of the Merchant Marine Act require the consideration or the interpretation of the other in attaining their respective applications intended by the Congress.

In asserting the application of the rule *in pari materia* herein, the gravamen of plaintiff's argument in effect is a renewed challenge to the assessment of duties on the subject merchandise under the tariff statutes because of the previous determination by Customs that plaintiff had violated the coastal shipping laws under the provisions of section 883 of the Merchant Marine Act. This argument is a reassertion of the plaintiff's contention to invoke collateral estoppel, which this court has hereinbefore fully addressed.

For all of the reasons hereinbefore stated, this court accordingly holds that the motion of the plaintiff for summary judgment must be denied and that the cross-motion of the defendant must be granted.

Let judgment be entered accordingly.