SPEARHEAD INDUSTRIES, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 81-6-00780

Before FORD, *Judge.*

(Decided October 7, 1983)

*Faegre & Benson* (*James B. Loken* and *Randy M. Lebedoff,* at the trial and on the brief) for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Madeline B. Kuflik,* trial attorney), for the defendant.

FORD, *Judge:* The question presented in this action pertains to the proper classification, for customs duty purposes, of inflatable air caps and poncho capes used by children on Halloween. The merchandise was classified as "Toys * * * not specially provided for: Other: Other" under the provisions of item 737.95, Tariff Schedules of the United States, as modified by T.D. 68/9 and assessed with duty at 17.5% ad valorem or 16.8% ad valorem, depending upon the date of entry.

Plaintiff contends the imported merchandise constitutes "parts of toys" under said item 737.95, and not toys or unfinished toys. Under this theory it is the position of plaintiff that its claims, which are specific provisions, would prevail over the classification by virtue of General Interpretative Rule 10(ij). This rule provides that a "part" does not prevail over a specific provision for said part. The provisions claimed to be specific by plaintiff are item A703.72, TSUS, as modified *supra,* for the caps, and item 772.30, TSUS, as modified *supra,* for the capes. Since the merchandise is from a beneficiary nation, under the provisions of the General System of Preferences (GSP), plaintiff contends the caps are entitled to entry free of duty while the capes are dutiable at 12.5% ad valorem. Alternatively plaintiff contends the principle of equitable estoppel should be applied to the Customs Service to prevent the changing of the classification set forth in writing on March 20, 1979. In any event plaintiff alleges the changes were arbitrary and capricious within the meaning of the Administrative Procedures Act, 5 USC 706.

The pertinent provisions of the statutes involved read as follows:

Toys, and parts of toys, not specially provided for:

\*        \*        \*        \*        \*        \*        \*

Other:

*     *     *     *     *     *     *

737.95     Other

*     *     *     *     *     *     *

Headwear, of rubber or plastics:

*     *     *     *     *     *     *

A703.72     Other

*     *     *     *     *     *     *

772.30     Wearing apparel (including rainwear) not specially provided for, of rubber or plastics

*     *     *     *     *     *     *

### SCHEDULE 7, PART 5, SUBPART E, HEADNOTE 2

2. For the purposes of the tariff schedules, a *"toy"* is any article chiefly used for the amusement of children or adults.

### GENERAL HEADNOTES AND RULES OF INTERPRETATION

10(h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished;

10(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

19 CFR:

### § 177.1    General ruling practice and definitions.

(a) *The issuance of rulings generally*—(a) *Prospective transactions.* It is in the interest of the sound administration of the Customs and related laws that persons engaging in any transaction affected by those laws fully understand the consequences of that transaction prior to its consummation. For this reason, the Headquarters Office of the United States Customs Service will give full and careful consideration to written re-

quests from importers or other interested parties for rulings or information setting forth, with respect to a specifically described Customs transaction, a definitive interpretation of applicable law, or other appropriate information * * *

\*    \*    \*    \*    \*    \*    \*

(b) *Oral advice* * * * Oral opinions or advice of Customs Service personnel are not binding on the Customs Service * * *

\*    \*    \*    \*    \*    \*    \*

(d) *Definitions* (1) A "ruling" is a written statement issued by the Headquarters Office that interprets and applies the provisions of the Customs and related laws to a specific set of facts * * *

\*    \*    \*    \*    \*    \*    \*

(6) The term "Headquarters Office" as used herein, means the Office of Regulations and Rulings at Headquarters, United States Customs Service, Washington, D.C.

## § 177.2  Submission of ruling requests.

\*    \*    \*    \*    \*    \*    \*

(d) Requests for immediate consideration. The Headquarters Office will normally process requests for rulings in the order they are received and as expeditiously as possible. However, a request that a particular matter be given consideration ahead of its regular order, if made in writing at the time the request is submitted or subsequent thereto, and showing a clear need for such treatment, will be given consideration as the particular circumstances warrant and permit * * * upon request and where a clear need is shown for such action, a collect telephone call will be made to advise that the ruling letter has been issued and is being mailed.

The record consists of the testimony of six witnesses called on behalf of plaintiff and the receipt in evidence of thirty-two exhibits. Defendant offered the testimony of three witnesses and had received in evidence twenty-two exhibits. A substantial portion of the testimony and exhibits relate to the alternative claim for plaintiff concerning the principle of equitable estoppel.

The balance of the record relates to the use of the imported headwear and cape. The makeup and reflective strips are of domestic manufacture and are not in controversy. The complete product, imported and domestic, was always sold as a unit. The inflatable headdress, which has a humorous character on the inflatable portion, is positioned above the wearer's head by means of a vinyl bonnet. Waterbased makeup which is coordinated with the costume is applied to the child's face to make it appear as the character's neck. The makeup does not hide the child's face nor create a character. Based upon the record the makeup supplied with the cos-

tume, due to the small quantity provided, would ordinarily be used only once, while the costume is advertised as reusable. In the event the full container of makeup was not used, the record establishes it would be dried out by the following Halloween. A strip of reflective tape attaches to the rear of the costume to increase the wearer's visibility at night. The poncho cape is worn to complete the costume. The costumes were designed for sale by mass merchandisers during the Halloween season.

The poncho cape was designed to complete the costume and, as Exhibit 1 indicates, "[f]its easily over coats with complete freedom." The headpiece provides amusement to the wearer, and, according to plaintiff's witness Dr. Wallinga and defendant's witness Beige, a child wearing the headpiece without the makeup would be amused.

Plaintiff's alternative claim relating to the principle of equitable estoppel cannot be sustained inasmuch as it is not applicable against the government when acting in its sovereign capacity. The collection of customs duty falls within this category. *Air-Sea Brokers, Inc.* v. *United States,* 66 CCPA 64, C.A.D. 1222, 594 F.2d 1008 (1979). *Bethelhem Steel Corp.* v. *United States,* 4 CIT 229, 551 F. Supp. 1148 (1982); *United States* v. *Bar Bea Truck Leasing Co., Bar Mar Warehouse Co.,* Nos. 82–36, 83–515 (Fed. Cir. August 11, 1983).

The question of whether the change in ruling of the classification was arbitrary and capricious under 5 USC 706 likewise cannot be sustained. It is evident from Exhibit 9 that the opinion expressed therein and upon which plaintiff is relying is not a binding one. This is obvious from the following language, contained as part of Exhibit 9.

The title reads:

TARIFF CLASSIFICATION AND RATE OF DUTY (NOT BINDING)

At the bottom of the form in capital letters is the following:

THE OPINIONS EXPRESSED IN THIS REPLY WITH RESPECT TO THE DUTIES ON THE SCHEDULE DESCRIBED ABOVE ARE NOT BINDING

This is followed up with directions as to how a binding determination may be obtained, which read as follows:

> If you need a binding classification as to the dutiable status of the merchandise you intend to export to, or import into, the United States, write the Commissioner of Customs, Washington, D.C. 20229. * * *

In addition to the ruling not being binding, it is also evident that the ruling from the Customs Information Exchange in New York was not a voluntary request for information, but one which is required by the Customs Manual in order to assess customs duty throughout the United States. Such ruling, which changed the original nonbinding ruling is not arbitrary or capricious within the meaning of 5 U.S.C. 706 since Customs was merely following its

own procedures. Under these procedures a first importation requires the commodity specialist to submit a request to the Customs Information Exchange on Customs Form 6431 for a report to the National Import Specialist. Exhibit 34 is said request and report which indicates a sample was sent with the request. Plaintiff urges that the rulng by the National Import Specialist is arbitrary in view of the fact that only the imported articles, and not the makeup and reflective strip, were submitted to him. It is axiomatic in this field of jurisprudence that merchandise is dutiable in its condition as imported. The imported articles were all that were necessary to submit for a ruling from the National Import Specialist. *United States* v. *Baker Perkins Inc.,* 46 CCPA 128, C.A.D. 714 (1959). *Carrington Co.* v. *United States,* 61 CCPA 77, C.A.D. 1126, 496 F.2d 902 (1974).

Insofar as the classification is concerned, since plaintiff contends the imported articles are parts of toys and the classification was as toys, there is no dispute that said merchandise falls within the definition of a toy as found in Headnote 2, Subpart E, Schedule 7. In any event the classification is presumed to be correct under 28 U.S.C. 2639(a)(1), as well as case law. This presumption stands unless plaintiff overcomes it by establishing the classification to be incorrect and to affirmatively establish a correct classification. Plaintiff has not met the dual burden of proof.

In view of the fact that the imported articles fall within the definition of a toy, the issue is narrowed with respect to the proper classification. It is the position of plaintiff as indicated *supra* that the imported articles are parts of toys and not toys *per se* or unfinished toys. By virtue of General Interpretative Rule 10(ij) such classification cannot prevail over a specific classification. Plaintiff claims that Headwear of Rubber or Plastic * * * other, and Wearing Apparel (Including Rainwear) N.S.P.F. of Rubber or Plastics, as set forth in items A703.72 and 772.30 *supra,* are specific provisions which prevail over parts of toys.

The Court will first consider the issue of whether the imported merchandise constitutes parts of toys. The question as to what constitutes a part for tariff purposes has given rise to much litigation. From this litigation there have developed two lines of cases on the subject. The first line of cases was brought about by *United States* v. *Willoughby Camera Stores Inc.,* 21 CCPA 332, T.D. 46851 (1933). In order to be a part under the *Willoughby* case, the article must be an integral, constituent or component part, without which the article to which it is joined could not function as such article. The other line of cases evolved from *United States* v. *Antonio Pompeo,* 43 CCPA 9, C.A.D. 602 (1955), which held that a device may be a part of an article even though its use is optional and the article will function without it, if the device is dedicated for use upon the article, and, once installed, the article will not operate without it. Under either of these theories, the imported caps and capes do not,

in the opinion of the Court, fall within the category of parts. The record, as well as an examination of the imported articles, establishes to the satisfaction of the Court that they are Halloween costumes. The addition of the waterbased makeup constitutes the packaging of two different toys in one box. The sale of makeup by plaintiff (Exhibit 13) for use with or without the imported costume, as well as the sale of makeup by Ideal Toy Co. (Exhibit X), establishes the above articles to be toys. The use of the reflective tape for greater visibility is highly commendable, but would not relegate the imported merchandise to be parts of toys. The imported articles are toys for tariff purposes as classified.

The claims of plaintiff are overruled, and the case is dismissed. Judgment will be entered accordingly.