UNITED STATES of America,
Plaintiff-Appellee,

v.

FULTON DISTILLERY, INC.,
Defendant,

Highlands Insurance Company,
Defendant-Appellant.

SAFECO INSURANCE COMPANY OF
AMERICA, Defendant-Appellee,

v.

WATERFILL & FRAZIER, INC., Canco,
Inc. and Waterfill Land Company, Inc.,
Third-Party Defendants.

No. 76–1380.

United States Court of Appeals,
Fifth Circuit.

April 21, 1978.

Albert E. Phillips, George Reid, Atlanta, Ga., for defendant-appellant.

William L. Harper, U. S. Atty., Atlanta, Ga., Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Chief, Appellate Section, Gilbert E. Andrews, Gary R. Allen, M. Carr Ferguson, Asst. Attys. Gen., Tax Div., Dept. of Justice, Washington, D. C., for United States.

John M. Bovis, Atlanta, Ga., for Safeco Ins. Co.

Wynette J. Hewett, Washington, D. C., for other interested parties.

Before BROWN, Chief Judge, GEWIN and TJOFLAT, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Fulton Distillery, Inc. (Fulton) engages in the spirited business of distilling liquor. To satisfy Bureau of Alcohol, Tobacco and Firearms (ATF) requirements for assurance of payment of excise taxes, Fulton obtained two surety bonds. After four of Fulton's excise tax payment checks were dishonored the Government demanded payment from Fulton and its surety, Highlands Insurance Co. (Highlands) and Safeco Insurance Co. (Safeco), but the taxes remained unpaid and this action ensued. The District Court granted motions of summary judgment filed by the United States and by Safeco, in effect making Highlands liable for the taxes. On appeal Highlands contends that compliance with the applicable regulations was an implied duty of the Government as obligee under the bond and the Government's failure to comply discharged the surety from further obligation under the bond. We disagree and affirm.[1]

### The Regulatory Scheme

Congress placed upon producers of distilled spirits an obligation to pay excise tax on the product. 26 U.S.C.A. § 5001(a). Although the tax attaches as soon as the substance comes into existence, 26 U.S.C.A. §§ 5001(b) and 5004(a) & (b), the tax is not assessed until the product is actually withdrawn from the distillery. 26 U.S.C.A. § 5174(a). Federal law allows several methods of tax payment, including a deferred payment plan whereby the distilled spirits may be removed from the plant with payment of the tax deferred. Distillers operating under the deferred payment plan are required, on a semi-monthly basis, to file excise tax returns and to make tax payments. The tax owed on a given return is due and payable at the end of the return period after the return was filed. To be placed on a deferred payment plan a distiller must furnish a withdrawal bond to secure payment of the tax on spirits withdrawn from the plant. 26 U.S.C.A. § 5174.[2]

Under the regulatory scheme the ATF is responsible for enforcing and administering the laws covering alcoholic beverages. ATF officials register distilleries, inspect plants, and supervise the distillery operations through various methods which control the removal of distilled spirits and which afford adequate security of the tax revenue. The Internal Revenue Service (IRS), however, provides tax return forms for distillers and collects the excise tax paid by distillers.

Regulations promulgated by both the ATF and IRS require that a distiller who fails to make payment under the deferred

---

1. The summary judgment in favor of Safeco is uncontested on appeal.

2. Section 5174 in relevant part reads:
   Withdrawal bonds
   (a) Requirements.—No distilled spirits . . . shall be withdrawn from bonded premises except on payment of tax unless—
   (1) the proprietor of the bonded premises has furnished such bond . . . to secure payment of the tax on such spirits, under such regulations and conditions, and in such form and penal sum, as the Secretary or his delegate may prescribe; or
   (2) the proprietor of a distilled spirits plant authorized to rectify or bottle distilled spirits has—

   (A) made application to the Secretary to withdraw distilled spirits from bond and has assumed liability at the receiving plant for payment of the tax thereon;
   (B) furnished bond . . . to secure payment of the tax on such spirits, under such regulations and conditions, and in such form and penal sum, as the Secretary or his delegate may prescribe; and
   (C) complied with such other requirements as the Secretary of his delegate may by regulations prescribe.

   *  *  *  *  *  *

   Fulton was at all relevant times a "proprietor" or registered operator of a qualified distilled spirits plant.

payment plan be placed on a cash prepayment basis whereby distilled spirits may be withdrawn from the plant only by payment in cash of the excise tax at the time of withdrawal.[3] Under the present regulatory structure the ATF, as the enforcement arm of the IRS in matters concerning the collection of taxes on alcohol, cancels the deferred payment plan and implements the cash prepayment program. A provision of an internal manual of the IRS directs agents to notify the ATF by telephone or wire upon discovery of an uncollectible alcohol excise tax payment.[4] As a practical matter the ATF's placement of a distiller on a cash prepayment basis consequently relieves the surety from further exposure to liability since removal of distilled spirits will be permitted only by cash prepayment.

### Trouble Brewing At Fulton

The facts in this case are undisputed. On August 31, 1973, Highlands executed a blanket $250,000.00 withdrawal bond with Fulton as principal which remained in effect at all times relevant to this litigation. Under the bond, Highlands would incur liability if the principal failed to pay the tax upon the withdrawal of the distilled spirits from the distillery.

Fulton issued a check dated October 31, 1973, in the amount of $68,998.65 in payment for distilled spirits taxes for the period October 1, 1973 through October 15, 1973. The IRS deposited this check but it was dishonored and returned to the IRS on November 23, 1973. Although the check clearly bore the name "Fulton Distillery, Inc." and gave an address, the IRS initiated a routine investigation to determine the identity of the taxpayer and the nature of the tax.

While an IRS agent continued her investigation of the first check, a $38,644.20 check issued by Fulton on November 15, 1973 in payment of taxes for the period October 16, 1973 through October 31, 1973, was returned on December 7, 1973 upon dishonor. This second check had been

**3.** 26 C.F.R. § 301.6311–1(a)(3) in pertinent part states:

> *Payment of tax on distilled spirits, wine, beer, cigars, or cigarettes; proprietor in default.* Where a check or money order tendered in payment for taxes on distilled spirits, wines, beer, or rectified products (imposed under chapter 51 of the Code), or cigars or cigarettes (imposed under chapter 52 of the Code) is not paid on presentment, or where a taxpayer is otherwise in default in payment of such taxes, any remittance for such taxes made during the period of such default, and until the regional regulatory administrator in the Bureau of Alcohol, Tobacco and Firearms finds that the revenue will not be jeopardized by the acceptance of personal checks (if acceptable to the district director under subparagraph (1) of this paragraph), shall be in cash, or shall be in the form of a certified, cashier's, or treasurer's check, drawn on any bank or trust company incorporated under the laws of the United States, or under the laws of any State or possession of the United States, or a money order as described in subparagraph (1) of this paragraph.

Similarly, 27 C.F.R. § 201.380 reads:

> Methods of taxpayment.
> The tax on spirits shall be paid pursuant to a return on Form 2521 or on Form 2522, filed as provided in § 201.383. Remittance for the tax in full shall accompany the return and may be in any form which the district director is authorized to accept under the provisions of § 301.6311–1 of this chapter and which is acceptable to him: *Provided,* That where a check or money order tendered in payment for taxes is not paid on presentment, or where the taxpayer is otherwise in default in payment, any remittance made during the period of such default, and until the assistant regional commissioner finds that the revenue will not be jeopardized by the acceptance of a personal check (if acceptable to the district director), shall be in cash or in the form of a certified, cashier's, or treasurer's check drawn on any bank or trust company incorporated under the laws of the United States, or under the laws of any State, Territory, or possession of the United States, or a money order, as provided in § 301.-6311–1 of this chapter. Checks and money orders shall be made payable to "Internal Revenue Service".

*See also* 27 C.F.R. § 170.51.

**4.** The relevant portion of the IRS Internal Handbook (SC and NCC Accounting and Data Control Revenue Receipts) states:

> .02 DISHONORED CHECKS (Cont'd)
> (2) (e) If the uncollectible item covers payment of alcohol or tobacco tax returns, immediately advise the Assistant Regional Commissioner (Alcohol and Tobacco Tax), by telephone or wire, of the uncollectible item.

drawn on an account which was entitled "Fulton Distillery, Inc., Excise Tax Account, 650 Fairburn Road, S.W., Atlanta, Georgia 30331." A third check in the amount of $28,151.55 was issued by Fulton on December 17, 1973 and returned unpaid on December 28, 1973. One final check in the amount of $10,698.45 was issued by Fulton on January 15, 1974, and returned to the IRS on January 29, 1974 after dishonor.

On January 24, 1974, eight weeks after the IRS received the first dishonored check bearing the name "Fulton Distillery, Inc." and after an additional $77,494.20 in bad checks had been issued, the IRS agent conducting the investigation notified the ATF that Fulton had failed to pay its distilled spirits excise taxes.[5] Accordingly, the ATF swiftly acted and placed Fulton on a cash prepayment plan. Shortly thereafter the Government demanded payment of all the unpaid tax from Highlands as Fulton's surety.

On appeal, Highlands' argument takes two clear courses, both centering around its contention that the Government's failure to place Fulton on a cash prepayment basis after receipt of the first bad check constituted a breach of an affirmative duty inferred from the applicable regulations. First, because this duty bears upon the relationship of Highlands and the Government, Highlands asserts that the duty became an implied condition of the surety contract and the Government's failure to comply with it discharged Highlands from liability under the agreement. Second, Highlands maintains that the Government's failure to comply with this duty increased the surety's risk and, consequently, under general principles of suretyship, discharged Highlands. Ostensibly Highlands asserts that this duty flows from 27 C.F.R. § 201.380[6] and the applicable provisions of the IRS internal manual.[7]

### Federal Imbibition

The United States commenced this action to recover unpaid excise taxes. Unquestionably, the Constitution authorizes the federal government to provide answers to controversies arising from the collection of federal taxes. U.S.Const. Amend. XVI; *Jacobs v. Gromatsky*, 5 Cir., 1974, 494 F.2d 513, *cert. denied*, 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107; *Erwin v. Cranquist*, 9 Cir., 1958, 253 F.2d 26, *cert. denied*, 356 U.S. 960, 78 S.Ct. 997, 2 L.Ed.2d 1067. Congress, however, has not addressed the specific question of the extent of a surety's liability on a withdrawal bond. Having determined that the constitutional requirement that Congress have the power to declare substantive rules of decision is satisfied, *Erie Railroad Co. v. Tompkins*, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Friendly, *In Praise of Erie—And of the New Federal Common Law*, 39 N.Y.U.L.Rev. 383, 384 (1964), we inquire whether state or federal law governs this suit. The Court must focus its attention on the nature and source of the right being enforced to answer this preliminary inquiry. *See Erie, supra;* Friendly, *supra* at 405; Mishkin, *The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision*, 105 U.Pa.L. Rev. 797, 798–801 (1957).

The controversy at hand bears a substantial relation to an established operation of the national government—the securing of tax revenue. The federal government has implemented an extensive statutory scheme to regulate and tax the production of distilled spirits. 26 U.S.C.A. § 5001 *et seq.* (Chapter 51). At the heart of this case lies a bond mandatorily required by federal statute. 26 U.S.C.A. § 5174. The United States suit proceeded under a feder-

---

**5.** Although the IRS agent could not remember what finally prompted her to call the ATF, she speculated that it may have been on the ground that these checks were, on their face, for a distiller.

**6.** See note 3, *supra* for text of the regulation.

It is interesting to note, however, that the regulatory basis for Highlands' argument was never made explicit and, in fact, Highlands' opening brief failed to even cite 27 C.F.R. § 201.380.

**7.** See note 4, *supra* for relevant text of the manual.

al cause of action derived from 26 U.S.C.A. §§ 7401 and 5174.[8] Furthermore, Highlands' appeal rests on its assertion that an employee of a federal agency neglected an implied regulatory duty. At stake is the collection of federal excise taxes under a federal contract called for by a federal statute. Consequently, there is an identifiable federal interest in the outcome and, under *Clearfield Trust Co. v. United States*, 1943, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838, the outcome is clearly a matter of federal substantive law. Correspondingly, any effort to import the regulatory scheme into the suretyship agreement in a fashion which discharges the surety's liability necessarily falls under a federal rule of decision.

*A No Less Sure Distillation Of The Law*

We are quick to point out that controversies over withdrawal bond liability arise infrequently, probably because the statute is so explicit. Consequently, few cases exist as precedent. Nonetheless, the federal law merchant guides the resolution of this controversy. The District Court correctly determined that *Hart v. United States*, 1877, 95 U.S. 316, 24 L.Ed. 479 controls this case. *Clearfield Trust Co., supra*.[9]

In *Hart* the surety on a distiller's bond claimed discharge because a government employee had illegally allowed removal of the spirits from bond prior to the payment of the tax. In rejecting the defense the Supreme Court stated:

> The government is not responsible for the laches or the wrongful acts of its officers. Every surety upon an official bond to the government is presumed to enter into his contract with a full knowledge of this principle of law, and to consent to be dealt with accordingly. The government enters into no contract with him that its officers shall perform their duties. A government may be a loser by the negligence of its officers, but it never becomes bound to others for the consequences of such neglect, unless it be by express agreement to that effect.

95 U.S. at 318 (citations omitted).

▆▆▆ Thus, only by *express* agreement or statute[10] can the Government assume the consequences of the neglect of its employees. Highlands' argument does not approach satisfying this requirement. First, Highlands' defense is premised upon the inference from the regulatory scheme of a duty to notify which inures to the surety's benefit. But more importantly, even if that duty were explicit, it is in no way tantamount to an express agreement by the government to be bound to a surety for the consequences of neglecting its duty.

But *Hart* also established a principle of general suretyship law:

> As between [the surety] and the government, [the surety] took the risk of the effect of official negligence upon the security which the law provided for his protection against loss by reason of the liability he assumed.

95 U.S. at 319. Under federal law a surety has been on notice for 100 years that he assumes the risk of negligent governmental conduct.

Highlands cannot circumvent the well-settled principles of *Hart*. The attempt by

---

**8.** Section 7401 authorizes the United States to bring a civil suit for the collection of taxes. It provides that:

> No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary or his delegate authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced.

This section and § 5174 (which requires a withdrawal bond to assure tax payments, *see* note 2, *supra*) combine to provide the United States with a federal cause of action against the surety.

Jurisdiction for this suit exists under 28 U.S.C.A. § 1345 which extends federal jurisdiction to suits commenced by the United States.

**9.** Although pre-*Erie, Hart* has been cited since that 1938 decision with approval by the Supreme Court. *Royal Indemnity Co. v. United States*, 1941, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361. *See also College of Virgin Islands v. Vitex Corp.*, 1966, D. V.I., 283 F.Supp. 379.

**10.** *See, e. g.*, Federal Torts Claims Act, 28 U.S.C.A. §§ 1291, 1346, 1402, 1504, 2110, 2401–02, 2411–12, 2671–80; Suits in Admiralty Act, 46 U.S.C.A. §§ 741–52.

Highlands to distinguish that case on the basis that no regulations were involved ignores those principles it clearly espoused. Although it is true that no regulations are shown to have existed at the time *Hart* was decided, nothing in the legislative history of or the regulations accompanying the relevant statutory provisions suggests that Congress intended to reallocate risks or disturb the holding of *Hart.* Instead, the purpose of the regulatory scheme is primarily to assure the collection of federal taxes,[11] all the while accommodating the practical needs of distillers.

In its effort to show that the Government's regulatory duty amounted to an implied condition of the bonding agreement, Highlands correctly argues that suretyship agreements may be conditioned and affected generally by federal regulations. *United States v. St. Paul-Mercury Indemnity Co.,* 3 Cir., 1952, 194 F.2d 68; *United States v. Glidden Co.,* 6 Cir., 1941, 119 F.2d 235, *cert. denied,* 314 U.S. 678, 62 S.Ct. 182, 86 L.Ed. 542. While agreeing with this general proposition, we view the perimeters set by the present regulations differently. Indeed, in both *Glidden* and *St. Paul* the statutes were liberally read so as to find surety liability and, accordingly, assure the collection of taxes. Similarly, the regulations at play here were primarily designed to facilitate the collection of taxes. Moreover, Highlands cites no case law—and we know of none—supporting the proposition that general regulations rise to the level of implied contractual conditions, particularly for the benefit of the surety.

Equally unconvincing is the second aspect of Highlands' argument. The Government's neglect could not have constituted an act which increased the surety's risk and discharged Highlands because the risk of neglect already had been allocated to the surety under the firmly rooted principles of *Hart.* Highlands cites no federal decision which supports its position.[12]

We hasten to point out that, even assuming a duty, the Government clearly did act in this case. In essence, Highlands complains that the Government did not act with sufficient speed to discover the source of the tax payment. While we would be faced with a more difficult determination if the Government had failed altogether to act, delayed action caused by a routine federal investigation does not arouse us to further scrutiny under the existing regulatory scheme and precedent.

AFFIRMED.

---

11. Counsel for Highlands admitted as much in his brief. Highlands' use of the legislative history of the Excise Tax Amendments of 1958 sheds no light on our inquiry and was admittedly an "argument by analogy" which has no real application to the issues raised in this case.

12. Highlands refers to *United States v. Duby,* 9 Cir., 1952, 201 F.2d 800 as an analogous case dealing with Miller Act bonds (40 U.S.C.A. § 270 *et seq.*). In view of the positive and specific holding of *Hart* that decision does not lead to a different result for us.

To support its position Highlands relies on Ga.Code Ann. § 103–203 which states that "any act of the creditor [obligee] . . . which injures the surety or increases his risk, or exposes him to greater liability, shall discharge him." Georgia law, however, is inapplicable since federal law (*Clearfield Trust, supra*) provides the rule of decision and *Hart* controls the disposition of this suit.