**OLD REPUBLIC INSURANCE CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 83–10–01450.

United States Court of International Trade.

Sept. 9, 1986.

Sandler & Travis, P.A. (Gilbert Lee Sandler, Mark D. Crames, Santiago G. Leon, Paul E. Linet), Miami, Fla., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office and Barbara M. Epstein and Jerry P. Wiskin, Civil Div., U.S. Dept. of Justice, New York City, for defendant.

## OPINION

RESTANI, Judge:

Plaintiff Old Republic Insurance Company (Old Republic) acted as corporate surety in connection with two entries of diesel engines that were liquidated by Customs over a year after their entry dates.[1] Plaintiff makes four basic arguments in this suit challenging collection of increased duties which were assessed upon liquidation. 1) Plaintiff contends that Customs failed to comply with its regulation that requires notice of extension of time for liquidation be provided the surety. 19 C.F.R. § 159.-12(b) (1980). Plaintiff asserts that this regulation was incorporated into the bonds covering the subject entries, and that the failure of Customs to comply with its obligations discharged Old Republic's liability. Defendant contends that this court lacks jurisdiction over this claim. Defendant also contests the merits of plaintiff's claim. 2) Plaintiff contends that because it never received a notice of extension of time for liquidation the merchandise should be deemed liquidated by operation of law at the rate of duty asserted by the importer at the time of entry, 19 U.S.C. § 1504(a) (1982).[2] 3) Plaintiff asserts Customs Ruling C.S.D. 83–20, which recognized discharge of the surety in this situation, was revoked through improper procedures. 4) Finally, plaintiff argues that regardless of its legal obligations, Customs is equitably estopped from seeking increased duties from Old Republic. Both parties have moved for summary judgment.

Certain critical facts underlying plaintiff's motion for summary judgment are not in dispute. Most importantly, it is clear that the importer, but not the surety, received a notice of extension of time for

**1.** The suit originally involved both entries, the particulars of which are outlined below:

|  | Entry 532650 | Entry 163212 |
|---|---|---|
| Port of Entry: | New York | New York |
| Entry Date: | Aug. 9, 1979 | Jan. 7, 1980 |
| Notice of Extension to Importer: | July 19, 1980 | Dec. 13, 1980 |
| Liquidation by Customs: | Jan. 30, 1981 | Feb. 20, 1981 |
| Protest Number: | 1001–1–007647 | 1001–1–007647 |
| Protest Date: | June 29, 1981 | June 29, 1981 |
| Protest Denial Date: | April 22, 1983 | April 22, 1983 |

At oral argument, counsel for plaintiff informed the court that the surety had obtained reimbursement for Entry 532650 and it was abandoning its claim as to that entry.

**2.** 19 U.S.C. § 1504(a) (1982) reads as follows:

(a) **Liquidation.**—Except as provided in subsection (b) of this section, an entry of merchandise not liquidated within one year from:

(1) the date of entry of such merchandise;

(2) the date of the final withdrawal of all such merchandise covered by a warehouse entry; or

(3) the date of withdrawal from warehouse of such merchandise for consumption where, pursuant to regulations issued under section 1505(a) of this title, duties may be deposited after the filing of an entry or withdrawal from warehouse;

shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer, his consignee, or agent. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

In 1984, the words "importer, his consignee, or agent" were amended to read "importer of record." Pub.L. 98–573, § 191(d)(1), 98 Stat. 2971 (1984) (codified as amended at 19 U.S.C. § 1504(a) (1982 & Supp. II 1984)). The amendments to § 1504 apply to articles entered on or after the 15th day after October 30, 1984, see Pub.L. 98–573, § 195(a), 98 Stat. 2972 (1984),

liquidation of the entry at issue.[3] Following liquidation and in response to a memorandum from plaintiff, Customs issued a ruling, C.S.D. 83–20, in which it held, *inter alia:* (1) when Customs fails to properly notify a surety pursuant to regulation, that surety's liability for payment of any increased duties, charges, etc., is discharged; and (2) in those instances in which Customs fails to notify a surety of an extension, this failure to notify is not rectified by subsequent notification after the extension has commenced. A copy of this ruling was sent to plaintiff's counsel in a letter dated December 8, 1982. On March 24, 1983, Customs sent a second letter and opinion to plaintiff's counsel, advising him that Customs had reconsidered its original position and now considered the surety liable. On April 13, 1983, Customs issued C.S.D. 83–20, which was subsequently published on December 20, 1983. 17 Cust.Bull. 754. In the meantime, Customs published a notice in the Customs Bulletin regarding C.S.D. 83–20. The notice read as follows:

## NOTICE

C.S.D. 83–20, initially published in the Customs Bulletin Volume 17, No. 15, page 39, was published inadvertently. The ruling letter dated December 20, 1982 has been reversed in part by Headquarters ruling dated March 24, 1983, which reversed holdings (1) and (2) of the ruling. Accordingly, holdings (1) and (2)

of C.S.D. 83–20 are reversed. Holding (3) of the ruling remains valid.

17 Cust.Bull. No. 19 at 8 (May 11, 1983).

Although these facts are not in dispute, there is disagreement between the parties on a number of legal issues, most importantly on the issue of how the basic statutory and regulatory provisions should be construed in relation to each other. That is, the Secretary may avoid liquidation, pursuant to § 1504(a), in the amounts asserted at the time of entry, even if liquidation occurs more than one year after entry. During the relevant time period this could be accomplished by extending the one-year liquidation period by giving notice to "the importer, his consignee, or agent." 19 U.S.C. § 1504(b)(1)–(3) (1982).[4] The Customs regulation, on the other hand, states: "If the district director extends the time for liquidation ... he promptly shall notify the importer or the consignee and his agent and surety...." 19 C.F.R. § 159.12(b) (1980).

### I. Equitable Estoppel

The first issue to be addressed is whether Customs is equitably estopped from claiming the increased duties. Defendant argues that: (1) plaintiff cannot estop the government from recovering the duties because plaintiff already tendered the duties voluntarily in order to commence the action; (2) equitable estoppel is not available against the government in its sovereign role of collecting or refunding import duties; and (3) even if estoppel is available

and are thus inapplicable to the case at bar. *See infra* note 4 for the text of § 1504(b).

3. The importer of record of the merchandise was Lind Samskar.

4. During the time of the importation and liquidation of the merchandise involved in this case, 19 U.S.C. § 1504(b) read as follows:

   **(b) Extension**
   The Secretary may extend the period in which to liquidate an entry by giving notice of such extension to the importer, his consignee, or agent in such form and manner as the Secretary shall prescribe in regulations, if—
   (1) information needed for the proper appraisement or classification of the merchandise is not available to the appropriate customs officer;

   (2) liquidation is suspended as required by statute or court order; or
   (3) the importer, consignee, or his agent requests such extension and shows good cause therefor.
   Pursuant to a 1984 amendment, the language critical to this case, "the importer, his consignee, or agent," now reads "the importer of record." Pub.L. 98–573, § 191(d)(2), 98 Stat. 2971 (1984) (codified as amended at 19 U.S.C. § 1504(b) (1982 & Supp. II 1984)). As noted *supra* at note 2, the amendments to § 1504 do not apply directly to the case at bar. All subsequent references to § 1504 in the context of the entry at issue will be to the 1982 version of the statute except where otherwise indicated.

against the government, plaintiff has failed to demonstrate that the elements of estoppel are met.

As to defendant's first point, neither this court nor the Court of Appeals for the Federal Circuit has considered whether a plaintiff must forfeit an estoppel claim if it has tendered duties as a prerequisite to a 19 U.S.C. § 1581(a) suit. For the reasons outlined *infra,* however, the court does not need to answer this question today.

The Federal Circuit has clearly stated that equitable estoppel is only available against the government if the government is acting in its proprietary, rather than its sovereign, capacity. *United States v. Bar Bea Truck Leasing Co.,* 1 Fed.Cir. 151, 155, 713 F.2d 1563, 1567 (1983); *Air-Sea Brokers, Inc. v. United States,* 66 CCPA 64, 68, 596 F.2d 1008, 1011 (1979) Thus, in *Air-Sea Brokers,* the court held that "equitable estoppel, even if available in cases involving the Government in its proprietary capacity, is not available against the Government in cases involving the collection or refund of duties on imports."[5] *Air-Sea Brokers,* 66 CCPA at 68, 596 F.2d at 1011. This position has been reiterated on numerous occasions by both the Federal Circuit and this court. *United States v. Reliable Chemical Co.,* 66 CCPA 123, 128, 605 F.2d 1179, 1184 (1979); *Wally Packaging, Inc. v. United States,* 7 CIT 19, 21, 578 F.Supp. 1408, 1410–11 (1984); *Spearhead*

*Industries, Inc. v. United States,* 6 CIT 176, 180 (1983), *aff'd,* 738 F.2d 454 (1984); *American Motorists Insurance Co. v. United States,* 5 CIT 33, 41 (1983); *Bethlehem Steel Corp. v. United States,* 4 CIT 229, 232, 551 F.Supp. 1148, 1150 (1982).

The most recent Court of International Trade case on the subject, which is also the basis of plaintiff's estoppel claim, finds an exception to the aforementioned rule. *United States v. Federal Insurance Co.,* 9 CIT ——, 605 F.Supp. 298 (1985), *appeal docketed,* No. 85–2343 (Fed.Cir. May 16, 1985).[6] This exception applies in cases in which the plaintiff can demonstrate affirmative misconduct on the part of the government, as well as establish the standard elements of estoppel.[7] *Id.* at ——, 605 F.Supp. at 303.

Whether or not affirmative misconduct exists here, plaintiff first must establish the elements of estoppel. Those elements are traditionally stated as follows:

(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts and (4) he must rely on the former's conduct to his injury.

*Federal Insurance,* 9 CIT at ——, 605 F.Supp. at 303 (citing *United States v.*

---

5. The court notes that, without making a proprietary/sovereign distinction, the Supreme Court has explicitly left open the issue of whether estoppel may run against the government under some circumstances. *Heckler v. Community Health Services,* 467 U.S. 51, 60 & n. 12, 104 S.Ct. 2218, 2224 & n. 12, 81 L.Ed.2d 42 (1984), *reh'd denied,* —— U.S. ——, 106 S.Ct. 1289, 89 L.Ed.2d 596 (1986).

6. In *Federal Insurance* the court found that Customs had breached its own regulations and the statutory scheme regarding oversight of importers and protection of sureties in "blatant disregard for the public interest." *Federal Insurance,* 9 CIT ——, 605 F.Supp. at 304. *Federal Insurance* is, thus, factually distinguishable from both the present case and other equitable estoppel cases in the Customs area.

7. The Eleventh Circuit has rejected the argument that there is an "affirmative misconduct" exception to the general rule that the United

States is not subject to estoppel when it acts in its sovereign capacity. *United States v. Context-Marks Corp.,* 729 F.2d 1294, 1297 n. 4 (11th Cir.1984).

Other Circuits have adopted affirmative misconduct as a fifth requirement in cases involving estoppel against the government, without explicit limitation. *See Free Enterprise Canoe Renters Ass'n v. Watt,* 711 F.2d 852, 857 (8th Cir.1983); *Pratte v. NLRB,* 683 F.2d 1038, 1041 (7th Cir.1982); *Akbarin v. INS,* 669 F.2d 839, 842 (1st Cir.1982); *TRW, Inc. v. FTC,* 647 F.2d 942, 951 (9th Cir.1981); *Yang v. INS,* 574 F.2d 171, 175 (3d Cir.1978). *Compare Azar v. United States Postal Service,* 590 F.Supp. 948, 954–55 (N.D.Ind.1984), *aff'd,* 777 F.2d 1265 (7th Cir. 1985) (requirement of affirmative misconduct only applies in cases in which government is acting in its sovereign capacity).

*Ruby Co.,* 588 F.2d 697, 703 (9th Cir.1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979) ).

█ First, in this case, the government "knew" that the liquidation period had been extended. It can also be assumed that it "knew" of the regulation requiring the district director to give plaintiff notice of any extension and that it had failed to provide such notice. Second, with regard to intent, this case is governed by this court's ruling in *Federal Insurance* that "[t]he government's mechanism for collecting duties is in its nature intended to encourage reliance on its regularity and propriety by those owing duties." *Federal Insurance,* 9 CIT at ——, 605 F.Supp. at 303. Third, plaintiff has alleged that it had no actual notice of the extension of the liquidation period and defendant has not disputed this.

Plaintiff, however, has failed to demonstrate that it relied on the regulatory guaranty of notice. Assuming, *arguendo,* that plaintiff relied on the regulation's guaranty of notice, plaintiff has failed to establish that the failure of the government to provide the notice caused it harm. *See, infra,* Part V. In order to establish estoppel, plaintiff must be able to demonstrate that it was prejudiced in some tangible way. *Lincoln National Life Insurance Co. v. United States,* 582 F.2d 579, 582, 217 Ct.Cl. 515 (1978); *cf. Federal Insurance,* 9 CIT at ——, 605 F.Supp. at 303 ("As a result of reliance on the propriety of the government's conduct, Cometals lost $230,-344.12."). Inasmuch as plaintiff has not established one of the traditional elements of estoppel, the court need not address whether affirmative misconduct is present.

## II. Reversal of Ruling Recognizing Surety's Discharge

Following the issuance of C.S.D. 83–20, 17 Cust.Bull. 754 (1982), but before publication thereof, Customs issued a ruling reversing C.S.D. 83–20 in part. 17 Cust.Bull. No. 19 at 8 (1983). Normally there would be no question of the procedural validity of such a modification. The problem in this case arises because of the subsequent publication of C.S.D. 83–20.[8] Plaintiff contends that this notice of reversal is ineffective to modify C.S.D. 83–20, because Customs failed to comply with regulations governing modification of published rulings. Defendant argues that Customs complied with all applicable regulations and effectively modified C.S.D. 83–20 as claimed in the notice.

The resolution of the controversy rests with the appropriate characterization of the ruling. Customs regulations establish two procedures for modifying or revoking rulings. The choice of procedure depends upon whether the ruling has established a "uniform practice." A "uniform practice" is established by any ruling that affects a rate of duty or charge and is published in the Customs Bulletin. 19 C.F.R. § 177.-10(b) (1983).[9] Such a ruling cannot be changed to result in the assessment of a higher duty or charge unless two conditions are met. First, the original ruling must be determined to be "clearly wrong." *Id.* Second, the fact that it is under review must be published in the *Federal Register.* 19 C.F.R. § 177.10(c) (1985). Plaintiff contends that C.S.D. 83–20 is such a ruling.

On the other hand, a ruling that does not affect the rate of duty or charge or is not

---

**8.** Customs initially had the option of publishing the *decision or otherwise making it available* for public inspection. Plaintiff's contention that Customs was obligated by law to publish C.S.D. 83–20 merely because it is a precedential decision is in error. As defendant notes, both the statute and the regulation require that Customs "publish the decision in the Customs Bulletin *or otherwise make it available for public inspection*" within 120 days of the issuance of the decision. 19 U.S.C. § 1625 (1982); 19 C.F.R. § 177.10(a) (1983) (emphasis added).

**9.** There is no longstanding practice at issue here such as that before the court in *Heraeus-Amersil, Inc. v. United States,* 8 CIT 329, 331–33, 600 F.Supp. 221, 223–25 (1984) (denying defendant's motion to dismiss in part); 9 CIT ——, 617 F.Supp. 89 (1985) (granting consent motion to clarify prior opinion and judgment and granting plaintiff's and defendant's motions for summary judgment in part), *aff'd,* 795 F.2d 1575 (Fed.Cir. 1986). Thus, any exception to the requirement of publication to establish a uniform practice is not applicable here.

published in the *Federal Register* can be modified or revoked without compliance with the aforementioned procedures if Customs later finds that the determination is in error or is not in accordance with the current views of Customs. 19 C.F.R. § 177.-9(d)(1) (1983).[10] Such modification or revocation is effected by Customs giving notice to the person to whom the ruling letter was addressed and, when appropriate, by publication of a notice in the Customs Bulletin. *Id.*

■ Defendant contends that these less stringent procedures apply because C.S.D. 83–20 is not a ruling "regarding a rate of duty or charge" within the contemplation of 19 C.F.R. § 177.10(b). In support of this position, defendant cites this court's decision in *American Air Parcel Forwarding Co. v. United States*, 7 CIT 231, 587 F.Supp. 550 (1984). At issue in *American Air Parcel* was ruling TAA No. 10, a published ruling which pertained to the appropriate factors to consider in establishing export and transaction value for appraisement purposes. As in the case at bar, Customs subsequently issued another ruling, TAA No. 40, which retroactively revoked part of TAA No. 10 without following the notice and comment provisions of 19 C.F.R. § 177.10(c). *Id.* at 232, 587 F.Supp. at 552. In determining whether TAA No. 10 was a ruling "regarding a rate of duty," the court first defined the term "rate of duty" as "a fixed ratio or proportion arrived at through a particular classification which, when applied to the value of the imported item, will determine the amount of tariff to be paid." *Id.* at 234, 587 F.Supp. at 554. The court found that neither TAA No. 10 nor TAA No. 40 "dealt with a 'rate of duty or charge' since the fixed ratio against which the value of the

merchandise was applied remained the same." *Id.* As defendant contends, this language from *American Air Parcel* controls the instant case. TAA No. 10 involved valuation of merchandise, to which the rate of duty is applied. C.S.D. 83–20 involves the question of who must receive notice of an extension of the time for liquidation, an issue even more remote from the issue of what rate of duty applies. Therefore, C.S.D. 83–20 did not establish a uniform practice regarding a rate of duty or charge and, consequently, the notice requirements of 19 C.F.R. § 177.10(c) are inapplicable.

### III. Deemed Liquidation

The statute at issue provides for three situations in which Customs may not be able to liquidate merchandise in a timely manner. 19 U.S.C. § 1504(b)(1)–(3) (1982). When one of these situations arises, the Secretary may extend the liquidation period by giving notice to "the importer, his consignee, or agent." *Id.*[11] The customs regulation, on the other hand, states: "If the district director extends the time for liquidation ... he promptly shall notify the importer or the consignee *and* his agent *and surety....*" 19 C.F.R. § 159.12(b) (1980) (emphasis added). This regulation may be read in a variety of ways, but unlike the statute, it clearly requires notice to the surety, at least, for some purposes.[12]

The parties are correct that the key to resolving this issue is in divining the legislative intent underlying 19 U.S.C. § 1504. Defendant contends that the language of the statute makes clear that Congress explicitly excluded sureties from those parties who must receive notice of an extension for

10. *See, supra* note 9.

11. *See supra* note 4 for text of 19 U.S.C. § 1504(b). Failure to properly extend the time results in deemed liquidation at the previously asserted rate. *See supra* note 2.

12. The court has recently considered the relationship between 19 U.S.C. § 1504(b) and 19 C.F.R. § 159.12(b) in a related context. *Detroit Zoological Society v. United States*, 10 CIT ——,

630 F.Supp. 1350 (1986). In that case, however, there was a direct conflict between the statutory requirement of notice to the consignee *or* agent and the regulatory requirement of notice to the consignee *and* agent. *Id.* at ——, 630 F.Supp. at 1357–59. The additional reference to sureties in the regulation was not at issue nor was the special position of sureties in the duty collection scheme discussed.

it to be valid.[13] In support of this argument, defendant draws a comparison between the provision governing extension of time for liquidation and the provision governing suspension of liquidation. As noted above, extension is effected by giving notice to "the importer, his consignee, or agent." 19 U.S.C. § 1504(b), *supra* note 4. In contrast, the statute requires that if liquidation is *suspended*, the Secretary must give notice to "the importer or consignee concerned and to any authorized agent and surety of such importer or consignee." *Id.* § 1504(c).[14] Defendant contends that the difference in the statutory provisions signifies Congressional intent that sureties not be notified of extensions of liquidation.[15] In support of this contention, defendant invokes the principle of statutory construction, *expressio unius est exclusio alterius*, that is, expression of one thing is the exclusion of another. More specifically stated, "where Congress ... has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." *Marshall v. Western Union Telegraph Co.*, 621 F.2d 1246, 1251 (3d Cir.1980); *see also South*

*African Marine Corp. v. United States*, 10 CIT ——, 640 F.Supp. 247, 252–53 (1986) (citing *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 457–58, 94 S.Ct. 690, 692–93, 38 L.Ed.2d 646 *reh'g denied*, 415 U.S. 952, 94 S.Ct. 1478, 39 L.Ed.2d 568 (1974)).

The relevant legislative history does not clarify the reasons Congress may have chosen to treat sureties differently with regard to receipt of notices of extension and suspension. The statutory provisions relating to liquidation were drastically revised with the passage of the Customs Procedure Reform and Simplification Act of 1978. Pub.L. No. 95–410, 92 Stat. 888. The former law failed to require liquidation to be completed within a specific time period. The new bill provided for deemed liquidation, extension of the time for liquidation, and suspension of the liquidation process. The report of Senate Committee on Finance included as some of the reasons for the changes (1) increasing certainty in the customs process for sureties, among others, (2) helping sureties to better control their liabilities, and (3) protecting sureties

---

13. Plaintiff sees a scheme of dual liquidation. That is, the liquidation may be valid as to the importer because it has notice of the extension but it is invalid as to the surety without notice. According to plaintiff Congress foresaw such dual liquidations when it allowed sureties additional time to protest under 19 U.S.C. § 1514(c)(2) (1982) which reads as follows:

> A protest of a decision, order, or finding described in subsection (a) of this section shall be filed with such customs officer within ninety days after but not before—
> (A) notice of liquidation or reliquidation, or
> (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made.
> A protest by a surety which has an unsatisfied legal claim under its bond may be filed within 90 days from the date of mailing of notice of demand for payment against its bond. If another party has not filed a timely protest, the surety's protest shall certify that it is not being filed collusively to extend another authorized person's time to protest as specified in this subsection.

Thus, according to plaintiff, under § 1514(c)(2), the original liquidation could stand as to the importer, but be superceded as to the surety.

Plaintiff believes Congress intended a similar result here. The court finds no support for this theory of dual liquidation in either § 1514 or its legislative history. *See* S.Rep. No. 249, 96th Cong., 1st Sess. 254, *reprinted in* 1979 U.S.Code Cong. & Ad.News 381, 640; *see also Siaca v. United States*, 754 F.2d 988, 990 (Fed.Cir.1985) (court states in dictum that it "would seem possible" that all parties interested in an entry would be bound by a successful protest by the surety alone).

14. Suspension of liquidation is one ground upon which an extension may be granted. 19 U.S.C. § 1504(b)(2) (1982); *see supra* note 4. Pursuant to the statutory scheme, it appears that if liquidation has been suspended and the time for liquidation will be extended as a result, then the Secretary must tell the importer or consignee and their authorized agent and surety of the suspension, but need only notify the importer, the consignee, or agent of the extension. Thus, if the extension does not involve a suspension there would be no requirement of notice to the surety under the statute.

15. The court views the intent more narrowly, that is, as intent that the extension be effective without notice to the surety.

against losses resulting from the dissolution of their principals in instances in which there has been undue delay in liquidating entries. S.Rep. No. 778, 95th Cong., 2d Sess. 32, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2211, 2243. While these considerations are consistent with the desire to provide sureties with notice of extension of the time for liquidation, Congress failed to require such notice to them in section 1504(b), as a prerequisite to extension while explicitly requiring notice to sureties in section 1504(c), if a suspension of liquidation has occurred. Since the provisions are part of the same statutory scheme regarding liquidation of entries, the court can only assume that Congress was aware of the fact that it was omitting sureties from the list of parties to whom notice of extension must be given before the extension is effective.

Further support for the conclusion that Congress did not inadvertently omit sureties from section 1504(b) is found in the subsequent amendment to the statute. As noted above, in 1984, Congress amended the very provision at issue to change the language "the importer, his consignee, or agent" to "the importer of record." *See supra* note 2. Congress did not see fit to add sureties. In addition, this same amendment was made to the suspension provision, section 1504(c), leaving untouched the requirement of notice to the surety in addition to the importer of record.

Although the court should not place too high a value on the views of one Congress as to the construction of a statute enacted by another Congress, *United States v. Southwestern Cable Co.,* 392 U.S. 157, 170 [88 S.Ct. 1994, 2001, 20 L.Ed.2d 1001] (1968), the views of a subsequent Congress may be given some consideration in interpreting relevant Congressional intent. *Seymour v. Superintendent of Washington State Penitentiary,* 368 U.S. 351, 356–57 [82 S.Ct. 424, 427–28, 7 L.Ed.2d 346] (1962); *see Heckler v. Turner,* [470 U.S. 184] 105 S.Ct. 1138, 1152–53 [84 L.Ed.2d 138] (1985); *Mattz v. Arnett,* 412 U.S. 481, 505 [93 S.Ct. 2245, 2258, 37 L.Ed.2d 92] (1973).

*Maine Potato Council v. United States,* 9 CIT ——, 613 F.Supp. 1237, 1243 (1985); *see Four "H" Corp. v. United States,* 9 CIT ——, 611 F.Supp. 981, 984 (1985). Thus, while not determinative, the fact that Congress recently amended, by means of the same bill, the two provisions under discussion, without attempting to harmonize them, lends some weight to the court's conclusion that sureties were intentionally omitted from previous versions of § 1504(b).

■ Given ʹCongressʹ apparently intentional omission of sureties from the list of parties who must receive notice as a precondition to a valid extension, the court concludes that the notice that was undisputedly given to the importer in this case was sufficient to effectuate the extension of time for liquidation.[16] In order to be consistent with the statute, the customs regulation cannot be read to effect a deemed liquidation in this case.

## IV. Jurisdiction over the Contract Claim

The court's finding that extension of time for liquidation was not invalidated by Customs' failure to notify the surety of the extension of time for liquidation does not resolve plaintiff's contract claim. Plaintiff claims that the customs regulation providing notice to the surety, 19 C.F.R. § 159.-12(b), became a term of the bond.[17] Plain-

---

16. Plaintiff cites *Tyler v. Donovan,* 3 CIT 62, 535 F.Supp. 691 (1982), for the proposition that a time period will not be triggered unless notice is given pursuant to the prescribed procedure, in that case by *Federal Register* publication. *Tyler* is clearly distinguishable from the case at hand. In *Tyler* the statute and regulation stating how notice was to be given were consistent. In this case, if the regulation is read to establish notice requirements as prerequisites to an extension, it is in conflict with the language of the statute.

17. 19 C.F.R. § 159.12(b) has not been found invalid. It may be valid for purposes other than establishing prerequisites to a valid extension. *See Detroit Zoological,* 10 CIT at ——, 630 F.Supp. at 1358–59 (Secretary may provide for notice to additional parties as a matter of conve-

tiff contends that the failure to provide this notice constituted a material breach of contract, which discharged plaintiff's liability under the bond. Thus, plaintiff seeks restitution of the duties it paid to Customs as a precondition to bringing the 28 U.S.C. § 1581(a) claim. Defendant challenges plaintiff's theory on two grounds. First, it contends that this court lacks jurisdiction over such a claim. Second, it challenges the claim on the merits.

Plaintiff asserts three bases of CIT jurisdiction over this contract claim, 28 U.S.C. §§ 1581(a), 1581(i)(4) and ancillary jurisdiction. Plaintiff's first argument is that this claim is a challenge to liquidation of the entry, that it protested liquidation pursuant to 19 U.S.C. § 1514(a)(5) (1982),[18] and the denial of the protest thereto is grounds for CIT jurisdiction. 28 U.S.C. § 1581(a) (1982). Inasmuch as the court has rejected plaintiff's contention that the liquidation was invalid, either *in toto* or as to the surety alone, there is no reason to discuss further this basis of jurisdiction for a contract claim.

At oral argument, plaintiff argued for the first time that this court has jurisdiction over the contract claim under 28 U.S.C. § 1581(i)(4) (1982 & Supp. II 1984).[19] Plaintiff concedes that if the contract claim can be divorced from the body of customs laws,

then defendant is correct that this court lacks jurisdiction under section 1581(i)(4). Plaintiff argues, however, that this claim cannot accurately be considered a general contract claim because it involves violation of a specific customs regulation that explicitly confers a benefit on the surety. Defendant argues that the United States Claims Court, and not the CIT, has jurisdiction over the contract claim, pursuant to 28 U.S.C. § 1491(a)(1) (1982).[20] As defendant has acknowledged, if the claim is generally encompassed by the language of the statutes conferring jurisdiction on each court, then jurisdiction would be in this court. 28 U.S.C. § 1491(b) (1982) ("Nothing herein shall be construed to give the United States Claims Court jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade....").

In determining whether this court is the appropriate forum for hearing this claim, the court must bear in mind the Congressional purpose underlying section 1581(i). The legislative history states the purpose of section 1581(i) as follows:

[Section 1581(i) grants] the court jurisdiction over those civil actions which arise directly out of an import transaction and involve one of the many international trade laws. The purpose of this section was to eliminate the confusion which cur-

---

nience to the parties). Note that Customs did not repeal this regulation following reversal of C.S.D. 83–20. The intended effect of the regulation is the subject of Part V of this opinion.

**18.** This section was amended by the Trade and Tariff Act of 1984, Pub.L. No. 98–573, § 612(b)(1), 98 Stat. 2948, 3034. This amendment, however, became effective after the relevant events in this case had occurred, *see id.* § 626(b)(1), 98 Stat. 3042, and, in any event, would not affect the outcome here.

**19.** 28 U.S.C. § 1581(i) provides in pertinent part:

[T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
(1) revenue from imports or tonnage;
(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

\* \* \* \* \* \*
(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

**20.** 28 U.S.C. § 1491(a)(1) (1982) reads in pertinent part:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or *upon any express or implied contract with the United States,* or for liquidated or unliquidated damages in cases not sounding in tort. (Emphasis added.) *Compare* 28 U.S.C. § 1346(a)(2) (1982) (provides for concurrent jurisdiction in the district and claims courts over the same actions if the claim does not exceed $10,000).

rently exists as to the demarcation between the jurisdiction of the federal district courts and the Court of International Trade. This language made it clear that all suits of this type are properly commenced only in the Court of International Trade and not in a district court. Thus, the Committee did not intend to create any new causes of action, but merely to designate definitively the appropriate forum.

H.R.Rep. No. 1235, 96th Cong., 2d Sess. 33, *reprinted in* 1980 U.S.Code Cong. & Ad. News 3729, 3745.

■ "Where jurisdiction is asserted under 1581(i), the court must not accept the allegations at face value but must determine the thrust of the complaint." *Montgomery Ward & Co. v. Zenith Radio Corp.*, 69 CCPA 96, 106, 673 F.2d 1254, 1261, *cert. denied*, 459 U.S. 943, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982). The thrust of plaintiff's complaint is a challenge to the collection of duties from a surety on an entry in a situation which calls for the proper application of a customs regulation. Such a claim involves the administration and enforcement of the laws providing for the collection of duties, for revenue purposes or otherwise. Thus, it falls within the purview of section 1581(i)(4), with respect to section 1581(i)(1) & (2), and was properly commenced in this court.[21]

Defendant argues, however, that even if this court would normally have jurisdiction over this case, plaintiff has not raised its claim in a timely manner. An action of which the CIT has jurisdiction under section 1581(i) "is barred unless commenced in accordance with the rules of the court within two years after the cause of action first accrues." 28 U.S.C. § 2636(h) (1982 & Supp. II 1984). Defendant maintains that the breach of contract claim "accrued" on the date of the demand upon the surety for payment of the liquidated amount. This occurred on April 3, 1981. The summons in this case was filed October 3, 1983. Under defendant's interpretation of accrual of the cause of action, plaintiff's breach of contract claim is time barred.

■ Defendant's position as to when the cause of action accrued is incorrect. It is true that the underlying basis of plaintiff's claim is that defendant breached the surety contract. In most cases, such a claim would be raised as a breach of contract defense to a collection claim by the government brought pursuant to 28 U.S.C. § 1582(2). Plaintiff, however, was put in an unusual position in this case. At the time defendant made its demand for payment of the liquidated amount, April 3, 1981, plaintiff might have decided to wait to bring its contract claim as a defense in a collection action. When its protest was denied on April 22, 1983, plaintiff had to pay the demanded amount in order to bring an action under section 1581(a). 28 U.S.C. § 2637(a) (1982); *see American Air Parcel Forwarding Co. v. United States*, 6 CIT 146, 150, 573 F.Supp. 117, 120 (1983). Once it paid this amount, the possibility of bringing the breach of contact claim as a defense to an action in this court was lost, inasmuch as Customs lost all incentive to bring a collection claim. Thus, plaintiff was forced into the offensive position of seeking a refund. The claim at issue, therefore, is more precisely characterized

---

21. *United States v. Federal Insurance Co.*, 6 CIT 243 (1983), seems to reach a different conclusion. There is no indication, however, that 28 U.S.C. § 1581(i)(4) was considered as a basis of jurisdiction in that case. Where jurisdiction might be present in this court under § 1581(i)(4) or in other federal courts, under mandamus, taking, or similar theories, the results have varied. *Compare Azurin v. von Raab*, Civ. No. 86-0189, Slip Op. (D.Ha.1986) [Available on WESTLAW, DCTU database] (district court jurisdiction because no customs law found giving Customs right to retain certain imported items) *with Azurin v. United States*, 10 CIT ——, 632 F.Supp. 30, 31 (1986) (CIT had § 1581(i) jurisdiction over action to compel release of property held by Customs). In *St. Paul Fire and Marine Insurance Co. v. United States*, 1 CIT 283 (1981), cited by defendant, the court found it did not have jurisdiction over a claim by a surety that it was not legally responsible for paying the duties. *St. Paul*, however, was commenced in November, 1976, and 28 U.S.C. § 1581(i) took effect on November 1, 1980. Pub.L. No. 96-417, § 701(a), 94 Stat. 1727, 1747.

as one for reimbursement, inasmuch as plaintiff is seeking refund of sums it claims were erroneously paid. Thus, plaintiff's cause of action did not accrue until it paid the duties, that is, until it could claim Customs had money that should be reimbursed or refunded to it. *Cf. United States v. Beck,* 758 F.2d 1553, 1558 (1985) (government action to recover overpayment on medicare claim accrues when unjustified payment is made). The court has been informed that such duties were tendered shortly before the action was commenced, and well within the two year period.

## V. Breach of Contract Claim

■ Plaintiff contends that the failure of Customs to give it notice of the extension pursuant to 19 C.F.R. § 159.12(b) discharged Old Republic from its surety obligations. Defendant argues that Customs did not breach any express, statutory or regulatory conditions of the bond.

To resolve this dispute, the court must first determine whether two regulations, 19 C.F.R. §§ 113.44(a) and 159.12(b), are terms of the surety bond. 19 C.F.R. § 113.44(a) (1980) provides that "[t]he assent of the sureties to any extension of the period prescribed in a bond is not necessary when the extension is authorized by law or regulations." As noted *supra,* 19 C.F.R. § 159.-12(b) (1980) requires notice to the surety "[i]f the district director extends the time for liquidation," implying that notice need only be given to the surety after extension has been granted.

The court has examined the immediate delivery and consumption entry bond signed by the parties in this case. The only provisions explicitly referred to in the bond do not concern this dispute.[22] The bond is silent as to which, if any, statutory and regulatory provisions should be incorporated as terms of the bond.

*United States v. De Visser,* 10 F. 642, 647 (S.D.N.Y.1882) provides a framework for determining whether the regulation in question is properly considered a term of the bond. *See also United States v. Fulton Distillery, Inc.,* 571 F.2d 923, 928 (5th Cir.1978); *American Casualty Co. v. Irvin,* 426 F.2d 647, 650 (5th Cir.1970). In *De Visser,* a surety sought to raise as a defense in a collection action a statute providing that goods "shall be deemed abandoned to the government and sold" after three years. *De Visser,* 10 F. at 646. To determine whether this statute was a term of the bond, the court inquired as to whether the statute created any obligation of the government to the surety, or whether it is merely directory. *Id.* at 647. The court found that a customs bond must be understood or applied with reference to customs laws, and that insofar as the applicable statutes and regulations are "designed to affect the rights of parties to the contract [, such provisions] must be regarded as parts of the contract." *Id.* at 648. In contrast, statutes and regulations that "are designed only to direct the officers of the government in the performance of their duties for its own protection and security merely, are construed as directory to them only, and as not creating any obligation to the surety in the bond, nor as forming any part of the contact of the government with him." *Id.*

The key questions, then, are whether 19 C.F.R. §§ 113.44(a) and 159.12(b) create rights of the parties and what result flows from violation of those rights. Section 113.44(a) limits the rights of a surety under a bond and, as such, is intended to be a term of the bond. Absent this provision, a surety might have the right to reconsider its status as surety in the event the time for the importer's performance, that is, payment of duties, is extended by extending the time for liquidation. *See Bank of Uniontown v. Mackey,* 140 U.S. 220, 224, 11 S.Ct. 844, 846, 35 L.Ed. 485 (1891); *SEC v. H.L. Rodger & Bro.,* 444 F.2d 1077, 1081

---

**22.** These provisions are sections 485(d), 448(b), 499, 484, and 505(a) of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1485(d), 1448(b), 1499, 1484, and 1505(a), and address the technicalities of entry, special delivery permits, examination of merchandise, and payment of duties on entry.

(7th Cir.1971); 10 S. Williston & W.H.E. Jaeger, *Williston on Contracts*, § 1222 at 726–27 (3d ed. 1967).[23] The bond and rider involved in this case obligate the surety to pay import duties that are not paid by the importer, up to a specific amount. Under normal circumstances, this obligation continues until the import duties are paid. If the time for liquidation is extended the maximum number of times, the increased duty obligation may not be paid for another four years and the bond period may be said to be "extended." 19 U.S.C. § 1504(d) (1982).[24] *See supra* note 4. Pursuant to section 113.44(a), the surety assents to such lawful extension of the liquidation period.[25] The court has determined *supra* that the extension in this case was valid, therefore, this case does not involve an invalid or unassented to extension of the payment obligation or the bond term.

On its face, section 159.12(b) creates an unconditional obligation of the government to notify sureties of any extension of the liquidation period. If this regulation is intended to protect sureties, it should be read into the contract. Evidence of such intent would exist if the surety would be able to avoid prejudice to its reimbursement and subrogation rights if given notice of the extension. First, as to subrogation rights, the court notes that Congress has taken steps to ensure that in an ordinary case, a surety will not miss the opportunity to protest due to ignorance of an extension of the liquidation period. This risk is eliminated in most cases by the 1979 modification of the statutory scheme to give sureties addi-

tional time to protest a liquidation. Specifically, a surety may file a protest within ninety days from the date of mailing of notice of demand for payment against its bond, whereas other parties must file within ninety days of the date of liquidation. 19 U.S.C. § 1514(c)(2) (1982); *see supra* note 13. The legislative history explains this change as a response to the difficulties sureties had in fulfilling the prerequisites to suit in the Customs Court, now the Court of International Trade, "due to the frequent failures of the sureties to receive notice of the failure of the importer to pay the duties until after the time for filing a protest has expired." S.Rep. No. 249, 96th Cong., 1st Sess. 254, *reprinted in* 1979 U.S.Code Cong. & Ad.News 381, 640. In at least one situation, however, lack of notice of extension of the liquidation period may prejudice the surety's right to protest, regardless of the section 1514(c)(2) rights. If the importer fails to deposit the amount of estimated duties required upon entry under 19 U.S.C. § 1505(a) (1982 & Supp. II 1984) and 19 C.F.R. § 141.101 (1985), then a demand for this amount may be made on the surety prior to liquidation. If the surety seeks to protest the original entry classification or appraisement, and liquidation occurs more than 90 days after the original demand on the surety, the time of liquidation would govern the surety's time to protest. In such a case, the surety actually might be harmed by a failure to receive notice of liquidation.

Second, as to reimbursement, plaintiff has alleged, in the affidavit of John R.

---

**23.** The two primary theories offered to support this result are (1) the extension is a material alteration that increases the surety's risk by prolonging the term of the obligation, which may increase the probability of the principal's default and decrease the principal's ability to reimburse the surety, and (2) the extension may impair the surety's right to subrogation because the surety can no longer be subrogated to the creditor's rights by performing on the original date and subsequent events may reduce the value of the creditor's position. *See* 10 *Williston on Contracts* § 1225 at 731–33 (cited with approval in *Federal Deposit Ins. Corp. v. Manion*, 712 F.2d 295, 298 (7th Cir.1983)).

**24.** Once it is determined, upon liquidation or reliquidation, that duties are owed, payment is due within 15 days after that liquidation or reliquidation. 19 U.S.C. § 1504(c) (Supp. II 1984). Further, "unless payment of the duties is received by the appropriate customs officer within 30 days after that date, [such payment] shall be considered delinquent and bear interest from the 15th day after the date of liquidation or reliquidation at a rate determined by the Secretary of the Treasury." *Id.*

**25.** One could debate whether this regulation is necessary or whether the statute by implication prevents discharge of the surety solely by reason of a valid extension.

Ciago, potential methods by which a surety may protect itself financially if given notice of extension of the liquidation period and, presumably, which might be lost if notice is not given. Some of the examples only apply to prejudice as to future contract obligations, but defendant did not challenge the validity of the examples of potential present prejudice. Therefore, inasmuch as the language of the regulation implies it is intended for the sureties benefit, and inasmuch as a surety may be prejudiced in particular cases by failure to receive notice, the right to receive notice of the extension of liquidation period must be considered a term of the bond.

Having determined that section 159.12(b) is a term of the bond, the court must now consider the impact of the undisputed fact that the government failed to provide the surety in this case with the required notice. The Restatement of Security provides:

> Where, without the surety's consent, the principal and the creditor modify their contract otherwise than by extension of time for payment
>
> \* \* \* \* \* \*
>
> (b) the compensated surety is
>
> (i) discharged if the modification materially increases his risk, and
>
> (ii) not discharged if the risk is not materially increased, but his obligation is reduced to the extent of loss due to the modification.

*St. Petersburg Bank & Trust Co. v. Boutin,* 445 F.2d 1028, 1031 (5th Cir.1971) (quoting Restatement of Security § 128 (modification of principal's duty)). "Modification need not be accomplished by changes in the language of the instrument but may be by material departures from its terms in its execution and enforcement." *Boutin,* 445 F.2d at 1031. While these principles are announced in the context of modification of the principal's duty, they are also applicable to a situation involving a creditor's obligation to fulfill its duty under the contract. A. Stearns & J. Elder, *The Law of Suretyship,* 106 (5th ed. reprinted 1972) ("[W]here some positive act is required of the creditor and ... the creditor fails in his duty and

the surety's risk is increased thereby or he is deprived of the opportunity to protect himself, the surety will generally be discharged to the extent that he has been injured."). Thus, the question is whether failure to provide notice materially increased the surety's risk in this case. If so, the surety is discharged. If not, the surety's obligation will be reduced to the extent of its actual loss.

In the case at bar, the increase in the surety's risk due to failure to receive the notice has not been demonstrated to be material. Clearly, the surety in this case did not miss the time to protest due to failure to receive notice of the extension, as the companion claim in this case is predicated on 28 U.S.C. § 1581(a) jurisdiction over the denial of a protest. In addition, the potential prejudicial effects of not receiving notice, articulated in Mr. Ciago's affidavit, were presented as hypotheticals. Plaintiff did not allege that any specifically available opportunities to avoid loss were missed because of the defendant's omission in this case. Thus, no material increase in the surety's risk has been demonstrated here and the surety cannot be discharged. *See Continental Bank & Trust Co. v. American Bonding Co.,* 605 F.2d 1049, 1056–57 (8th Cir.1979) (surety liable on bond where it failed to establish in the record that modification materially increased the surety's risk). For the same reasons the surety cannot obtain a partial reduction in its obligation. Plaintiff's motion for summary judgment is therefore denied.

The sparcity of plaintiff's claims on the issue of loss or increase in risk thereof opens the question of whether it is appropriate to grant defendant's motion for summary judgment. Summary judgment is only available when no genuine issue as to any material fact exists. CIT Rule 56(d). The Supreme Court has made clear that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *First National*

*Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 *reh'g denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968)). The Court added that "[i]f the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Id.* (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (per curiam) and *Cities Service*, 391 U.S. at 290, 88 S.Ct. at 1593). Evidence on the issue of loss and risk is peculiarly within plaintiff's control and does not require discovery of defendant, but the evidence offered in this case consists of broad and vague allegations of prejudice unrelated to the facts of this case. Such evidence is merely colorable and is not significantly probative to justify proceeding to trial.

The court is aware, however, that because the disposition of some issues in plaintiff's favor and some in defendant's favor, the particular result reached here may have been difficult to foresee. In addition, the substantive challenge to plaintiff's affidavit was not made until defendant's final brief; thus, plaintiff did not have a full opportunity to respond. Accordingly, plaintiff is given thirty days to demonstrate that material factual issues remain to be tried. Defendant may renew its motion for summary judgment within 20 days thereof.